COULTER & RICHARDS, Executors, &c., *vs.* WILLIAM ROBERTSON, Trustee.

The doctrine is now settled in this State, that upon the dissolution of a corporation, whether by lapse of time or judgment of forfeiture, the principles of the common law are in force, except in so far as they have been altered or modified by legislation.

According to the common law, upon the dissolution of a corporation, all its real estate remaining unsold, reverts to the grantor and his heirs; the debts to and from it are extinguished; and its personal estate vests in the government; and these provisions of the common law, as decided in the *Commercial Bank of Natchez* v. *Chambers*, 8 S. & M. 17, and now reaffirmed, are applicable to banking corporations, except so far as legislation may have changed them.

By the act of the 26th of July, 1843, prescribing the mode of proceeding against incorporated banks for a violation of their corporate franchises, (Hutch. Code, 329,) it was, in substance, provided that by a judgment of forfeiture against a bank, its debtors should not be released from their debts and liabilities to the same, but the court should appoint a trustee "to take charge of the books and assets of the bank, to sue for and collect all debts due to it, and to sell and dispose of all property owned by it, or held by others for its use; and the proceeds of the debts when collected, and of the property when sold, to apply as might thereafter be directed by law, to the payment of the debts of such bank." *Held*, that by this law provision was made alone for the creditors of a bank subjected to forfeiture under it; there was no saving in behalf of stockholders; and, so far as their rights and interests in the choses in action and property of the dissolved bank were concerned, they were left unaffected by the act, and were to be controlled by the common law.

The case of the *Commercial Bank of Natchez* v. *Chambers*, 8 S. & M. 17, cited and reviewed, and the conclusion reached, that so far from recognizing any claim or right to exist in the stockholders of a bank after judgment of forfeiture and the appointment of a trustee, under the act of 1843, to the surplus after the debts are paid, the court in that case intended, with a full view of the

Coulter et al. *v.* Roberson.

subject, to decide that the creditors were the only parties whose rights were saved by the operation of that act.

Stockholders of a bank, as such, are not, in any sense of the word creditors of such bank; they constitute the incorporation itself, and, consequently, could not be their own creditors; a preservation, therefore, by legislation, of the assets of a dissolved bank, for the benefit of the creditors of the bank, would not operate in behalf of stockholders, but would rather indicate a legislative intention to exclude them, and leave them to their fate at common law.

As a general rule, in cases where it is doubtful what estate is vested in trustees, they will be presumed to take an estate large enough to enable them to accomplish the purposes of their trust; but will not by construction be held to take a greater estate than the nature of the trust demands.

When, therefore, a trustee of a dissolved bank, appointed under the act of 1843, has collected funds sufficient to pay all the debts of such bank, his powers, duties, and rights, as such trustee, are at an end; and he cannot lawfully, either at law or in equity, sue for and collect any of the debts that were due such dissolved bank, and yet remain unpaid.

And this is the case, whether the powers of such trustee are assimilated to those of a trustee appointed by contract, or whether he be regarded as an officer of court for certain purposes, with authority and duties defined by the statute; in either case, his trust being fully executed by the payment of the demand of the last creditor, his authority as trustee is at an end.

A trustee of a dissolved bank, appointed under the act of 1843, with power to sell and dispose of the property of the bank to pay its debts, has, when he has sold sufficient property for that end, of necessity, no further power to sell; his powers, like those of the sheriff who has levied on and sold real estate sufficient to satisfy the execution under which he makes the sale, are at an end when payment is made.

There cannot be, after the debts of the bank are paid, any resulting trust as to the residue of the property in the hands of the trustee, in favor of the stockholders; for the reason that their rights did not survive the forfeiture, and of course no equities in their favor attached to the surplus; there could be no resulting trust in their behalf when they themselves were not *cestuis que trust.*

In such a case a court of equity would not compel the trustee, the creditors being paid, to sue for and collect the remaining choses in action; for the reason that the trust, being at an end, there would be no person entitled to the fund when collected. And for a like reason, the trustee would not, after his trust was satisfied, be allowed to proceed at law.

Whatever may be the impolicy or injustice of the rules of the common law regulating the effect of a judgment of forfeiture, and however unsuited to the present condition of things, and hostile to the enlightened spirit of the age, it is for the legislature alone to say how far they shall be modified; and when that body has acted, it is the duty of the court justly to construe their laws and apply them.

In an action in the circuit court upon a note payable to a dissolved bank, brought by its trustee, appointed under the act of 1843, the defendant plead in substance that the plaintiff had paid off and discharged all the indebtedness of the bank, and had, therefore, no right to sue; on demurrer to this plea, it was *held,* to be no objection to it, that if issue were taken upon it, the circuit court would have to try the question, whether the debts of the bank were paid. That was a question merely of fact, which, however complicated the proof, the jury were competent to decide.

THIS action was founded on the promissory note of the testator of the plaintiffs in error, executed to, and held by, the Commercial Bank at Natchez. Prior to the institution of the suit, an information in the nature of a *quo warranto*, had been instituted against the bank, under which its charter had been declared forfeited, and the corporation was judicially dissolved, in pursuance of an act of the legislature of Mississippi, passed in July, 1843. Under the provisions of the eighth section of that act, William Robertson was appointed trustee for the purposes set forth in said section, which is in the following words, namely:

" Sec. 8. *Be it further enacted,* That upon judgment or forfeiture against any bank or banks, corporation or corporations, person or persons pretending to exercise corporate powers in this State, as contemplated by this act, the debtors of such bank or banks, corporation or corporations, person or persons pretending to exercise corporate privileges, shall not be released by such judgment from their debts and liabilities to the same; but it shall be the duty of the court rendering judgment, to appoint one or more trustees to take charge of the books and assets of the same; to sue for and collect all debts due such bank or banks, corporation or corporations, person or persons pretending to exercise corporate powers, and to sell and dispose of all property owned by such bank or banks, corporation or corporations, person or persons pretending to exercise corporate powers, or held by others for its or their use, and the proceeds of the debts, when collected, and of the property when sold, to apply as may hereafter be directed by law to the payment of the debts of such bank or banks, corporation or corporations, or persons pretending to exercise corporate powers. Provided further, that the notes of any such bank or banks, corporation or corporations,

Coulter et al. *v.* Robertson.

or others pretending to exercise corporate power, shall at all times be received in payment of any debts due the same." Hutch. Code, 331.

This action is brought by said trustee, to recover the amount of said promissory note; the declaration setting forth the judgment of forfeiture, the appointment of the trustee, &c.

The questions for consideration are presented in two pleas:

1st. That after the appointment of said trustee, and before the commencement of this suit, the trustee had collected and received of the debts and effects of the said bank, an amount of money sufficient to pay all debts of said bank, wherewith he had paid the same, and had also collected an amount of money sufficient to pay and discharge all costs, charges, and expenses incident to this trust, &c.

2d. That in the matter of the proceedings in Adams circuit court, in which said trustee was appointed, and at the November term, 1846, of said court, said trustee made and returned to said court a schedule of the effects and evidences of debt of said bank, in his hands, and thereupon, on the motion of the district attorney for said court, it was ordered and adjudged by said court, that said trustee should sell to the highest bidder, for cash, said property and evidences of debt, embracing the note here sued on; which judgment remains in full force and unreversed.

The plaintiff below demurred generally to these pleas, and the court below sustained the demurrers and rendered judgment for the trustee; and, thereupon, the case is brought to this court by writ of error, and the matter for determination is, whether either of these pleas presents a valid defence to the action.

*A. H. Handy,* for appellants.

By the rules of the common law, the debts due to the bank would have been totally annihilated in consequence of the judgment of forfeiture. Co. Litt. 13 b.; 3 Burr. 1868; 2 Kyd on Corp. 516; *State Bank* v. *State,* 1 Blackf. (Ind.) R. 283, 284; 2 Kent's Comm. 304–307; which is fully sanctioned by this court in *Nevitt* v. *Bank of Port Gibson,* 6 S. & M. 560; *Commercial Bank* v. *Chambers,* 8 Ib. 47. But for the saving in the act of

1843, under which the judgment of forfeiture in question was rendered, this total extinguishment of debts would have taken place; and this saving can be only according to the terms and for the purposes declared by that act, which, when accomplished, there is no further saving, and the debts are left to the course of the common law.

That the debts were saved from extinction only so far as might be necessary to pay the debts of the corporation, is abundantly manifest from the language of the eighth section, which creates the saving and declares its purpose. If a doubt could have existed on this point, this court has removed it.

In Nevitt's case, 6 S. & M. 531, this court says, "the act, in effect, declares the assets of the bank to be a trust fund, for the payment of debts," &c. "Indeed, if the legislature were to attempt to apply the assets to any other purpose than the payment of the debts of the corporation, it would transcend its constitutional limits. That body might have permitted the debts to be extinguished by the dissolution, but having rescued them from that fate, and declared them a trust fund, it could not direct it to any other object." Per Clayton, J. This is affirmed by Sharkey, C. J., in the Chambers case, 8 S. & M. 49, 50, in all its extent. Speaking of the eighth section, he says, "It contains two propositions; 1st, that the debts due to the bank shall not be extinguished; and 2d, that they should be applied to the payment of the debts due from the bank." p. 48. "There is a trust fund, a use to which it is to be applied, and a trustee to apply it." What was that use? He says, "the intention was to save all for the benefit of the creditors," "that the debts of the bank could have been kept alive for no other purpose." p. 50. Again, "the act of 1843 expressly declares that it shall be applied to the payment of debts." p. 54. And throughout both these decisions, this view is strongly and clearly held, and forms the basis of nearly all their reasoning.

But it is said, this trustee was vested with the legal title "to take charge of the books and assets, to sue for and collect all debts due such bank," &c.; and, therefore, that he can sue for and collect after all debts have been paid.

We reply, that he holds the legal title in trust only; and

when the purpose of the trust is accomplished, the trust estate ceases, and the fund, or estate, takes the same course as if the trust had never been created. Every trustee must be presumed to take an estate as large as is necessary for the purpose of his trust, and no larger. Fletcher on Trustees, 48, 8 Law. Lib. "The general rule," says Lord Eldon, "is, where property is given for particular purposes in trust, nothing more is subject than those purposes require." *Robinson* v. *Taylor*, 1 Ves. jr. 44. This is the rule both at law and in equity. In 2 Dowl. & Ry. 480; 16 Eng. Com. Law R. 106, Bayley, J., says: "I take it to be a well settled rule in the construction of wills, that the estate given to the trustee is to continue for so long a period only as is necessary to effect the purpose of the trust." "When the purposes of a trust can be answered by a less estate than a fee simple, a greater estate than is sufficient to answer such purpose shall not pass. *Doe* v. *Simpson*, 5 East, 162; *Player* v. *Nichols*, 8 Eng. Com. Law R. 92; *Whitby* v. *Goodtitle*, 1 Burr. 229; *Jackson* v. *Anderson*, 4 Taunt. 24; *Liptrot* v. *Holmes*, 1 Kelly (Ga.) R. 388–390; *Jones* v. *Cole*, 2 Bailey, R. 330; *Brown* v. *Weast*, 7 How. (Miss.) 181.

Courts of equity hold the same. "If there be a devise for the payment of debts, and nothing more is meant than to make a provision for the debts, all beyond what is required for that purpose, will remain real estate, and as such go to the heir." 2 Madd. Ch. Pr. 122; *Wright* v. *Wright*, 16 Ves. 188 (Sumner's edit.); 1 Ves. jr. 44; Ib. 447, notes 2 and 3; 2 Ib. 444; *Chitty* v. *Parker*, Ib. 261; 4 Hill (N. Y.) 492.

And this doctrine is distinctly recognized, and applied to the trustee in question, in 12 S. & M. 524, where Sharkey, C. J., says, these trustees "are not so far the legal representatives of the bank as to authorize suits to be brought in their names for any other than the purposes expressed in the act of 1843." He says: "He differs from an administrator in this; the administrator is the general representative of the deceased; a trustee has no power or rights beyond those expressly conferred as to the particular fund or duty intrusted to his management."

The principle upon which all this proceeds is, that when the

purposes of the trust are accomplished, it ceases to have any legal operation, and the estate, or fund, takes the same course as if it had never existed. If it be a trust affecting particular rights of private property, the enjoyment of those rights is restored as soon as the trust objects, with which the estate is charged, are fulfilled. If it be a trust preventing a forfeiture of estate for a particular purpose only, as in the present instance, the forfeiture must take effect whenever the end for which it was averted, is accomplished. The same principle applies in both cases; that when the trust is satisfied, the general rules of law prevail as to the residue. In the one case, its operation is to restore the enjoyment of a right suspended; in the other, to extinguish a right preserved only for a particular purpose, upon that purpose being fulfilled.

If, therefore, the debts of the bank were intended to be saved from extinction only for the purpose of paying its debts, there is no escape from the conclusion, that when all the debts were paid and satisfied, the trust was *functus officio*, and the surplus followed the rules of the common law, and was extinguished.

Again. It is said that the assets of the bank are a trust fund for the stockholders after the debts of the bank have been paid, and that this trustee has a right to collect them for their benefit.

It is above shown, that the debts were not saved from extinguishment for any such purpose, by the terms of the statute under which the judgment of forfeiture was rendered. Nor can we presume that the legislature, in passing that act, intended to save them for any other purpose than that declared in the statute; for this would be to violate the established principles of construction, both of statutes, (Dwarris on Stat. 695–703,) and of declarations of trust. 1 Madd. Ch. Pr. 452; 2 Story's Eq. Jur. § 1065 b. Nor can the remedy be extended beyond the plain words of the statute, upon the principle of carrying out the equity of the statute; for this would be to enact, not to expound, a statute. Dwarris, 711. And great strength is given to this view and against the alleged implication, by the fact, that in the other acts *in pari materiâ*, as well the act of 1846 as several others, the legislature expressly provided for stock-

Coulter et al. *v.* Robertson.

holders; so that the omission of them in the act of 1843, is clear evidence that they were not intended to be embraced in it.

Nor can it be presumed that the legislature intended any relief to stockholders of banks that might fall under the provisions of the act of 1843, if we recur to the history of the times. Such corporations had pursued a high-handed course of violations of their charters, and of frauds and outrages upon the public. By the law of the land, as it then stood, this subjected them to a forfeiture of their corporate rights, and a loss of all their property and assets. But the legislature thought proper to modify the rigor of the common law, in justice to the innocent creditors, and, for their benefit, to prevent an extinguishment of the debts due such corporations. We cannot presume that the legislature intended any benefit to the very parties who had violated the law and injured the community, when the main purpose of passing the act was to deprive them of the power of further mischief.

But it is said, that the assets are a trust fund for the benefit of stockholders, by reason of general equities, if not under the provisions of the act of 1843.

We insist that no such equity exists when the corporation is dissolved without making any provision for such rights, and especially in a case of dissolution by judgment of law for violation of charter. And the authorities cited to sustain the right of stockholders to distribution, have no application to a case like this. These authorities are, 1. Chancellor Kent's opinion in the Nevitt case, 6 S. & M. This opinion cannot be sanctioned as to stockholders, because it is opposed to the plain purport of the act of 1843, as is above shown. It is not recognized by this court in the Nevitt case, and is emphatically repudiated in the Chambers case, as to the general principle, which it so positively asserts as a principle of common law, that the debts due to and from the bank were not extinguished in consequence of the judgment of forfeiture; upon which point it is shown not to be the law by Chancellor Kent himself, in 2 Kent's Com. 304–308. And the authorities cited by him, in support of the opinion, have no application to a case of judicial for-

feiture and dissolution, without a previous provision for the parties in interest.

2. The expression in Justice Clayton's opinion in the Nevitt case, p. 568. But there he is not considering the rights of the parties interested in the trust; but what amounts to an execution of the judgment of forfeiture.

3. The general expressions in Justice Clayton's opinion in the Chambers case, p. 75. But this was not the opinion of the court, that being delivered by Sharkey, C. J., and, at farthest, they only go to justify the reservation of power by the legislature over the assets of the bank, for the payment of debts.

4. The case of *Mumma* v. *Potomac Co.* 8 Peters. But that was not a case of forfeited charter and dissolution by judicial proceedings, but one of transfer and merger of the rights, property, &c., by one corporation to another, by agreement of both parties. Under the circumstances of that case, it is clear that the property of the old corporation remained a trust fund for creditors and stockholders, because, while the old corporation was in existence, its property and rights were merely merged in the other. Angell & Ames, Corp. 668, note 6. But here the corporation is judicially dissolved, without any provision; and, except so far as the rights and property are saved from extinguishment by the terms of the act of 1843, all debts and choses in action are extinguished, and all chartered rights resumed by the State, under the rule of the common law. The difference between the two cases is plainly that between a transfer and an extinguishment. And there can be no room to doubt, under the principles of the common law, that if the charter of the Potomac Company had been declared forfeited, by judgment of law, without any provision for existing rights, the choses in action of the corporation would have been utterly extinguished to all intents and purposes.

5. The case of *Wood* v. *Dummer*, 3 Mason, is not a case of forfeiture by judgment, and simply recognizes the general doctrine, that the assets of a bank are a trust fund for creditors, and that the stockholders cannot defeat this right by winding up the bank, and dividing out the avails among themselves.

But even if any such equity existed in favor of the stock-

holders of this bank, we deny that this trustee has any agency in it, or any power over the assets for their benefit. The purpose of his trust is distinctly specified in the act authorizing his appointment, and his powers cannot extend beyond it. Sharkey, C. J., speaking of such a trustee, says, in *Bacon* v. *Cohea*, 12 S. & M., " he has no power or rights beyond those expressly conferred, as to the particular fund or duty intrusted to his management." When he has paid the debts of the bank, his trust is fulfilled, and his powers cease, whatever other rights may be involved in the assets of the bank.

Again, it is contended that he was appointed a trustee generally, and therefore has power to represent all interests connected with the assets. But he is the creature of the act of 1843. His powers are limited to the purposes declared by that act. The power of the circuit court to make the appointment, existed only by that act; and had that court attempted to confer any greater power than was authorized by the act, its act would have been void for want of jurisdiction. It had no general jurisdiction to appoint trustees to execute trusts, for that appertained to a court of chancery. And had the circuit court possessed such general power, it could not have exercised it under the provisions of the act of 1843, for the benefit of stockholders, because the stockholders had nothing to do with the proceedings; and, in order to appoint a trustee to represent their interests, a proper proceeding, to which they were parties, would have been necessary. Hill on Trustees, 184.

Again, it is contended that the act of 1843 reserved to the legislature general power over the assets of the bank, which was exercised by the act of 1846, for the benefit of stockholders, after the payment of debts. But it is above shown, that the debts due the bank were saved from extinguishment, solely for the purpose of paying its debts, and that the legislature had no power by legislation subsequent to the act of 1843, and after the appointment of the trustee under that act, to apply the assets to any other purpose. This point was fully presented in the Chambers case, and relied on in behalf of the debtors of the bank. They insisted that this reservation was made in the act of 1843, and that it was exercised in the act of

1846; that the latter act was, therefore, valid and constitu-tional, and that the assets should be sold under its provisions. The court held to the contrary, that the legislature had no power, after the judgment of forfeiture, under the act of 1843, " to apply the assets to any other purpose than the payment of the debts of the corporation." 6 S. & M. 531; 8 Ib. 49, 50. And this was decided at the instance of this very trustee.

Again, it is contended that the individual corporators of the bank, in virtue of their being stockholders, are creditors of the bank; that their claims as stockholders constitute " debts of the corporation," in the contemplation of the act of 1843.

The stock of a bank is the fund or property contributed by individuals, as the means upon which the bank is to deal with the public, to contract and pay debts,' &c. The separate own-ers are stockholders; that is, owners of the fund provided as a security for its debts. Their contributions to the fund are not debts of the corporation, but the foundation on which the cor-poration contracts debts. After the payment of all the debts, the corporation being undissolved, each one is entitled to take his share of the fund, with its avails; but this is not a debt of the corporation, but a right against the other individual mem-bers, who, as between themselves, stand only in the relation of individuals. For the corporation and the individuals associated together to form the corporation, are one and the same persons, and the relation of debtor and creditor cannot exist except be-tween different parties. Hence a stockholder could maintain no suit against the corporation to recover his stock, especially after dissolution, but the remedy would be against the other stock-holders as individuals. These principles, if they are not too evident to require authority, are fully sustained in Angell & Ames on Corp. 252. Verplank v. Merchants Ins. Co. 1 Edwards' Ch. R. 87.

Finally, it is said the act of 1843 is unconstitutional, unless the claims of stockholders were saved, because it worked a for-feiture of estate. But we reply, 1. That it was not that act that worked the supposed forfeiture, but the rules of the com-mon law, which are not altered as to stockholders, by that act. 2. The act provides for a civil, and not a criminal proceeding,

Coulter et al. *v.* Robertson.

and is not contrary to the provisions of the constitution. 4 S. & M. 439.

*S. S. Boyd*, on the same side, argued the case orally.

*J. Winchester*, on the same side, made an oral argument in the case.

*George Calhoun* filed an elaborate brief in the case.

[NOTE BY REPORTER. J. T. McMurran, Esq., one of the counsel for Mr. Robertson, made the following brief on the questions involved in this case, in the case of *C. G. Dahlgren, Adm'r of Neibert*, appellant, vs. *W. Robertson*, Trustee, appellee, which was argued and submitted to the court at the same time with this case, involving the same legal points.]

*J. T. McMurran*, for appellee.

Mr. Robertson, as trustee of the late Commercial Bank of Natchez, (appointed under the *quo warranto* law of 1843, at the May term, 1845, of the circuit court of Adams county,) filed his petition in the probate court, stating that the estate of Joseph Neibert had been declared insolvent, and commissioners were appointed to audit the claims against the estate; that among others, the claims due the late bank, amounting to $142,013.18, had been allowed, and the report confirmed by the court; that a dividend of two per cent. had been decreed to be paid; that Mr. Dahlgren, as administrator *de bonis non* of Neibert, had, upon demand, refused to pay the dividend, amounting to $2,-840.36. Petitioner prays citation, and a decree in his favor as trustee for the payment.

To this petition a demurrer was filed, which was overruled by the court. Defendant then filed his plea in bar, that there were no creditors of the late Commercial Bank of Natchez at the commencement of the suit, to whom the bank was indebted at the time of the forfeiture of its charter, or if there were, the trustee had more than sufficient funds to pay them.

The petitioner demurred to this plea, — the demurrer was sustained, — and defendant not pleading further, the court de-

25 *

creed that the defendant as administrator pay the dividend as claimed. And from that decree, he prosecutes this appeal.

The demurrer to the plea presents, in a concise form, the question intended to be discussed by counsel, and presented to the court for its decision on the merits; and, according to my views, it divides itself into two general propositions.

First. Whether Robertson's trust terminates on the payment of the debts due by the bank at the date of its dissolution, or when he has realized sufficient assets to discharge them, regardless of the rights and claims of the stockholders.

Second. Whether, if the trust really be determined upon the payment of the debts technically so called, or upon the collection of sufficient funds to pay them, the defendant (or any other debtor of the late bank) can avail himself of the matter in bar, and defeat a recovery.

I shall consider the last proposition first. The eighth section of the *quo warranto* law, passed in July, 1843, to be found in Hutch. Code, 331, expressly enacts, that, upon the judgment of forfeiture being pronounced, the debtors of the bank shall not be released from their debts or liabilities, but the court rendering the judgment shall appoint a trustee to take charge of the books and assets of the bank, sue for and collect all the debts due it, to dispose of all the property owned by it, and to apply the proceeds as provided in the act.

And this court has decided, in the cases of *The State* v. *Commercial Bank of Rodney,* 4 S. & M. 440, and of *Nevitt* v. *The Bank of Port Gibson,* 6 S. & M. 513, and reiterated the decision in the Chambers case and others, that a judgment of forfeiture against a bank and appointment of trustees under the act of 1843, is an assignment by operation of law of all the assets of the bank to the trustees. The effects vest, *ipso facto,* in the trustee upon his appointment, in the same manner and to the same extent, that the assets of a decedent vest in the administrator or executor upon his appointment, or the effects of a bankrupt vest in the assignee under the bankrupt laws. Upon his appointment, the trustee is the owner of the property and the holder or creditor of the debts due the bank, as fully and to all legal intents as the bank was

before the forfeiture of the charter. It is unnecessary to quote the particular language of the court in its decisions on this question. It is familiar to the court and the bar, and the only wonder is, that there could have arisen a difference of opinion in giving effect to the law of 1843, before the settlement of the question by this court in the Nevitt case.

The right, then, to the dividend, mentioned in the petition, vested in Mr. Robertson the moment of his appointment as trustee. The legal title was in him by virtue of that appointment; and what defence is it to the suit, to assert that he has collected sufficient funds to satisfy the liabilities of the late bank? Admit the fact, and still his legal interest in the debt remains unaffected. As remarked by the court in the case of *Folger et al.* v. *Chase, Executor,* 18 Pick. R. 66, 67, — " It is no concern of the defendants, how the money, when collected, is to be disposed of." He owes the debt, or rather in this case, as administrator, he has the money of the estate of Joseph Neibert in his hands to pay it, and he can discharge his obligation in no other way than by applying the money accordingly.

The trustee, appointed by the court under the act of 1843, is the same as a trustee appointed by deed or any other mode, with the same extent of powers and duties. And if Mr. Robertson's office were to become vacant by death or otherwise, a court of chancery would appoint a successor. Now suppose an individual were to make a deed in due form, conveying to a person his property and credits in trust, to sell the former and sue for and collect the latter, and to apply the proceeds to the payment of the grantor's debts, and no disposition of the surplus is made in the deed. Suppose that in the execution of this trust, in a suit by the trustee against a debtor, the debtor pleads in bar of the suit, that all the debts provided to be paid by the suit have been paid, or that the trustee has collected sufficient funds to pay them. Would such a defence be seriously considered by the court? Would any court in England or America think for a moment of entertaining such a plea, and proceeding to an examination of the entire transactions of the trustee, and determining collaterally, in the absence of the beneficiaries under the deed of trust, whether all the creditors

have been paid, or whether there has been collected a sufficient fund to pay them, &c.? I think not. The court would promptly decide that the trustee is the holder of the claim; he is entitled to collect it of the debtor, and it is no concern of the latter, what may become of the money after the trustee has received it; that the disposition of the fund may become a question between the trustee and other parties, but can never arise between him and the debtor.

So long as Robertson's appointment remains unvacated and unrevoked of record, and he is not enjoined from making collections, no court can, on principle or authority, determine that he is not entitled to collect the debt due by Dahlgren to the late bank. Questions may be raised as to the distribution of the fund, and as to the equities of third persons; but no doubt can possibly be entertained as to the trustees' legal right to sue for and collect this debt. In the language of Ch. J. Sharkey, in the Chambers case, the contracts between the banks and others " were preserved in full vigor. The law required that a trustee successor should be appointed; this was done, and he acquired the legal title to the property and choses in action. He became, in law, the owner. He could sue and collect and sell property."

There is another view of the question, which, in my opinion, must be conclusive in favor of the trustee on the point we are now discussing. Still admitting for argument, that the assets have been preserved to pay what are technically called the debts of the bank only, and no further, nor for any other purpose, how can a court of law, or even of equity, in a suit by the trustee of the bank prosecuting the debtor for a debt due the bank, determine the question? Can the probate court, or any other court, with or without a jury; can this court of last resort on the issue tendered by the plea in this case, and upon which Robertson will join issue, if his demurrer be overruled, investigate and settle his administration of the estate of the late Commercial Bank of Natchez, fix his compensation, examine his accounts showing his collections, payments, expenses, &c., and act judicially on his entire transactions connected with this business, since his appointment? And thereupon, as

the result of all this, determine whether Dahlgren, as administrator of Neibert, shall pay the dividend or not? What an anomalous and extraordinary proceeding it would be, — unheard of in a court of justice, without any principle to support it, and without the most remote analogy to any case or class of .cases in the books, of which I have any knowledge. But in what condition would the trust, the trustee, the creditors, and the debtors, as well as the grantors of the landed estate to the bank, be placed?

Is Dahlgren to be discharged, without paying even the costs and expenses incurred by the trustee in prosecuting this suit, leaving them to be paid by the more unfortunate debtors, who were obliged to pay, or voluntarily paid, at an earlier day? The case of *Fox* v. *Horah*, 1 Iredell (N. Carolina) Eq. Rep. 358, states a different doctrine as laid down by judge Gaston. Indeed, this authority, if authorities were needed, is clear and fully to the point, that a court of equity alone, upon a bill filed by the debtor, could entertain jurisdiction and decide on the matter set up by Mr. Dahlgren, if there were any thing in his defence.

We have admitted the facts stated in the plea in this case, for the purpose of raising the question, whether, in law, the defendant can make the defence; but I repeat, that if the demurrer be overruled, then Robertson takes issue and denies the facts stated in the plea. Now, I know that there are creditors of the late bank at this day, though I know nothing of their number, or of the extent of the funds collected by the trustee.

Then, if the decision of this court be against the demurrer, and the case sent back, issue will be joined on the plea, as in the other cases pending in the various courts of this State and of other States; and on that issue, in every case, must be tried Mr. Robertson's administration of his trust, — an investigation, on proofs, of the outstanding claims, of the amount of the trustee's compensation, the expenses and costs incurred by him, his payments, &c. One court may decide the claims of some creditors to be valid, and others not valid, and the creditor, of course, not in court; one court may fix Mr. Robertson's compensation at one sum, and another at a different sum; and

thus, upon some trials in some of the courts, the debtor may be discharged, in others, not. The courts of Louisiana, where suits are pending, may decide one way, the courts of Mississippi another way, and the courts of another State, still differently. Nothing can be found to warrant such a decision of this court, or the proceedings which would necessarily arise upon such a decision being made by *this court.* On the contrary, the correctness of my views will strike every jurist. Take the familiar examples of the estates of decedents, solvent or insolvent; the estates of bankrupts; trusts, whether created by deed or otherwise, which illustrate my position to the legal mind without comment.

The entire fund, as intended by the act of 1843, and from the very nature of the trust itself, must be in his hands before the trustee can pay over or distribute any of it, except at his own risk. Until he arrives at that point, it cannot be known whether the assets be sufficient, whether there will be a *pro ratâ* payment only, or whether there will be a surplus. And then, under the direction and decree of a court of equity, in my opinion, but in the opinion of others, under the order of the circuit court of Adams county, in pursuance of the act of 1846, the expenses are to be allowed; the claims of creditors adjudicated, and those allowed, paid; the trust account settled; and the surplus, if any, disposed of. If there should be a surplus, there, and in that court alone, where the trust is closed, must the question as to the disposition of the surplus be determined; no matter whether it shall be distributed among the stockholders of the late bank on the one hand, or among the debtors of the bank and the grantors of real estate to the bank, on the other.

Robertson is the administrator or trustee of the late Commercial Bank of Natchez; Dahlgren is the administrator or trustee of the estate of Joseph Neibert. The proper tribunal has declared a dividend in favor of the one estate against the other, — the money to pay which the fiduciary has in his hands, according to his report to the probate court, upon which the dividend was decreed. The other creditors of Neibert are not entitled to this dividend belonging to the late bank, and to

its representative, since it ceased to exist. The probate court has no longer jurisdiction of the $2,840 20-100, to decree it back to Neibert's estate and distribute it again, after having once decreed it; and there is no privity or equity between the other creditors of Neibert and the late bank or Mr. Robertson, by which they can be substituted beneficiaries in place of the stockholders. Nor have Mr. Neibert's children any claim upon this fund, their father's estate being insolvent. No; the trustee, Dahlgren, would become the fortunate possessor of it, to his own individual and exclusive use.

For the reasons, then, which I have stated, without enlarging on the subject, it is manifest that the matter set up in the plea of Mr. Dahlgren does not go to the cause of action, and is no defence to the petition; that a court of equity can alone take cognizance of the trustee, the trust, and the parties interested therein, settle the whole subject matters of the trust, hold the trustee to an account of all his acts, determine all questions that may arise in connection therewith, distribute the proceeds collected by the trustee, after deducting all necessary and proper expenses, and finally close the trustee's administration. The decisions of this court show that the trustee is, as to his powers and duties, the same as an administrator in regard to a decedent's estate, and neither the grant of his letters nor their duration can be called in question collaterally, as is attempted on the present occasion.

Second proposition. From the argument of the opposite counsel, it might seem, at first blush, that the rights of the stockholders of the late Commercial Bank of Natchez were necessarily involved in a decision of the question. It is necessary, therefore, that we should, in the first place, have a distinct view of the line which separates the question as to the extent of Robertson's trusteeship from the question regarding the rights and equities of the stockholders, independently of Mr. Robertson. Let it be determined that Robertson's trust is *ipso facto* determined, and then the stockholders claim, and are, in my judgment, entitled in equity to the surplus. The court might decide Robertson a trustee only for the creditors proper, *non constat* that equity would not seize upon the surplus fund

for their benefit. And if Robertson be not trustee for them, they have a right to be heard before any decision be given upon the question of their equity to the fund. If Robertson be not trustee for them, they are not before the court, directly or indirectly, they are not even named in the petition or plea; their rights regarding any surplus, including the debts due the late bank, cannot be adjudicated in this case. In determining the extent of the grant of power to Robertson, the claims of third persons to the fund, if Robertson's grant does not cover it, cannot be considered. If Robertson cannot, by virtue of his grant and as he believes, sue for and collect the debts, and hold the fund for the stockholders, they will, and ought to claim it on well settled principles of equity.

I proceed to the consideration of the second general question I have stated.

When we turn to the provisions of the act of 1843, under which Mr. Robertson was appointed, we find the language very comprehensive, and the intention of the legislature fully expressed. Act of July 26th, 1843; Hutch. Code, 329, 331. The object of the act was to provide a remedy on behalf of the State against delinquent banks for a forfeiture of their charters, and at the same time to preserve from destruction, according to the common law doctrine, the assets of the bank upon a judgment of forfeiture being rendered. This provision of the law to preserve the assets for the purposes for which the bank held them at the time of its dissolution, has been considered most wise and equitable by all courts, and has been adopted in one form or other by governments as nothing more than their duty, in modern times, where the subject has been brought to the consideration of the law-making power, and where it has not been overlooked till too late, as in some few cases to be found in the books. Governments, and courts in the administration of justice, consider such a provision but an act of justice to citizens; and such acts receive the most liberal construction, in order to prevent the most unjust and iniquitous consequences, that flow from this common law rule upon the dissolution of a corporation.

Thus, in the case of *Folger* v. *Chase*, 18 Pick. Rep. 63, 66,

the supreme court of Massachusetts, in reference to a law extending to banks, for the purpose of winding up their affairs, three years beyond the period limited by its charter, uses this language : " This is a just and wise remedial law, and ought to be liberally expounded. By the principles of the common law, upon the civil death of a corporation, all the real estate remaining unsold reverts back to the original grantor and his heirs, and the debts due to and from the corporation are extinguished. The object of the statute was to guard against the inequitable rule of the common law." And the court decide that by virtue of this statute of Massachusetts, the bank, not having collected the note in that case, had a right, before the expiration of the three years, to sell the note or transfer it, and thereby prevent its extinguishment, and the holder was entitled to recover on the note, though the three years may have expired.

So, the language of this court, in considering the act of 1843, is equally strong and marked. Among other views, Judge Clayton, in delivering the opinion of the court in the case of *Nevitt* vs. *The Bank of Port Gibson,* 6 S. & M. 561, remarks, that " the almost universal prevalence of such enactments, in some shape or other, in the States of this Union, proves that they have their foundation deeply imbedded in an innate sense of justice; and the condemnation of the common law rule by such men as Kent, as Gaston, as Tucker, and many others such as they, shows that it is in utter hostility to the spirit of this age. It belongs to the period when men who could not pay their debts were imprisoned for life, and when the estates of criminals were confiscated to the government; and it should be consigned to the same tomb with these antiquated barbarisms."

Let us now examine the act of 1843, and the other legislation of this State on the subject, and particularly the eighth section, and see whether it is in consonance with these views. It is in these words : " Upon judgment of forfeiture against any bank or banks, corporation or corporations, person or persons pretending to exercise corporate powers in this State, as contemplated by this act, the debtors of such bank or banks, cor-

poration or corporations, person or persons pretending to exercise corporate privileges, shall not be released by such judgment from their debts and liabilities to the same; but it shall be the duty of the court rendering such judgment, to appoint one or more trustees to take charge of the books and assets of the same; to sue for and collect all debts due such bank or banks, corporation or corporations, person or persons pretending to exercise corporate powers, and to sell and dispose of all property owned by such bank or banks, corporation or corporations, person or persons pretending to exercise corporate powers, or held by others for its or their use, and the proceeds of the debts when collected, and of the property when sold, to apply as may hereafter be directed by law to the payment of the debts of such bank or banks, corporation or corporations, or persons pretending to exercise corporate powers: provided further, that the notes of any such bank or banks, corporation or corporations, or other persons pretending to exercise corporate powers, shall at all times be received in payment of any debts due the same." This language is most full and explicit, that the debtors shall not be released by the judgment of forfeiture, from their debts and liabilities to the bank, but that the court rendering the judgment shall appoint trustees to take charge of the books and assets of the bank, to sue for and collect all debts due the bank, and to sell all property owned by the bank. So far, assuredly, there is no qualification in the language. It embraces every debtor, it embraces all the assets, and expressly enjoins on the trustee, as a duty, the collection of all the debts, as well as the sale of all the property. No one can doubt, that upon the judicial forfeiture of the charter of the Commercial Bank of Natchez, and the appointment and qualification of Mr. Robertson as trustee, he that instant became invested, by operation of law, with the title to all the assets of the bank, as effectually as the bank previously possessed it. By that appointment at that time, to repeat the language of Chief Justice Sharkey, he acquired the legal title to the property, or choses in action. Or in the language of Judge Clayton, in the Nevitt case, "the appointment of trustees is intended to be a part of the judgment, or made at the same instant with

Coulter et al. *v.* Robertson.

it. By the judgment, or simultaneously with it, the assets pass to the trustees, in trust for the·creditors and stockholders, in virtue of the assignment."

Apply the law and decisions.to this case. Did the dividends due to the bank by Neibert's estate, or Dahlgren as administrator of that estate, become vested in Robertson upon his appointment as trustee? Why, if Robertson did not become entitled to sue for and collect this particular debt due the bank, then he was not entitled to sue for and collect any debt due the bank, for there is no exception or limitation in the law. Neither this debt nor any other due the bank is exempted from suit and collection.

As the assets were saved, then, from the effect of the common law rule which I have mentioned, (and which, by the way, in my opinion, ought never to have been applied at this day to banks, or any other commercial or business corporations whatever,) at the only point of time when the rule could be applied to their destruction, by what provision of the act, or upon what principle of law, equity, or morals, or by what power of reasoning, is it to be established that the debt in this case and the other uncollected debts thus preserved, become now, after being preserved in full force and life for years, extinguished? I repeat that the day for the operation of this common law doctrine has passed; the legislature superseded and repealed it, and enacted in lieu thereof, the directly contrary rule, that the debtors should not be released, but that all the debts should be saved and collected; and by no authority from the law books, by no course of reasoning, can it be shown that this eighth section of the law of 1843, after furnishing the rule in regard to these assets of the late bank, has become now inoperative, and is virtually repealed, and the old common law has been again revived, and now extinguishes this debt heretofore saved. No. This cannot be. The debt became fixed and its destiny unchangeable, the moment it became vested in the trustee. Whatever may become of the effects of the late bank, when collected and reduced to money, the common law can have no bearing upon the question. Take an illustration. This court has decided, that upon the appointment of the trustee, the act

of 1843 operated as a legal assignment to him of all the debts and assets, as fully as an express assignment by the bank during her corporate existence would. Suppose the bank had assigned a debt due by Mr. Dahlgren and others, before her dissolution, to Mr. Robertson; Mr. Dahlgren, upon its dissolution, and in the absence too of the saving provisions of the act, could not plead that the debt had become extinguished, upon a judgment of forfeiture. The express assignment in that case would prevent it; the legal assignment in this case does so. It could be no defence for Mr. Dahlgren, to show that the purpose for which the assignment had been made by the bank did not require it, that it had been assigned to pay the creditors of the bank, and that they had been paid from collections of the other assigned debts. The answer to this would be, as expressed by the judge in the Massachusetts case, that this was no concern of Dahlgren's, it did not affect the obligation of his contract; he owed the debt, and it was no matter of his what the creditor would do with the money. If, therefore, the position of the opposite counsel is to be sustained, it must be on some other ground than the attempt to apply the common law rule to this debt, after escaping that catastrophe.

But, reply the counsel, there was only a qualified, a conditional saving of the assets; if the proceeds of the sales of the real and personal property and of the debts collected, exceed an amount sufficient to pay all the creditors of the bank, as soon as that fact shall be ascertained, the lands remaining unsold revert to the grantor, and the debts remaining uncollected become extinct. And from what language of the act is this construction derived? The following words in the section cited, — " And the proceeds of the debts when collected and of the property when sold, to apply as may hereafter be directed by law to the payment of the debts of such bank or banks." These words, it is asserted, are to have the magic effect of controlling and destroying, to a greater or less extent, according to the condition of the affairs of the bank, the substantive and positive enactment in the previous part of the same section, that the debtors shall not be released, — that the trustee shall take charge of the assets, and sue for and collect

all debts due to the bank. Because the legislature directed in this section that the assets should be applied by the trustee to the payment of the debts of the bank, but did not direct him to pay the surplus, if any, over to the stockholders of the late bank, the law, notwithstanding its broad and express language, did not intend to rescue the surplus from the effect of the common law rule, so that the stockholders might have it, but intended that the trust should *ipso facto* cease, whenever sufficient funds were realized to pay the creditors. And it may also be urged that the judgment of the court, forfeiting the charter of the Commercial Bank of Natchez and appointing Mr. Robertson trustee, in adopting the language of the act, but strengthens this construction. Such a construction would be at war with any fair or reasonable view of this remedial law, and opposed to rules which govern in the construction of laws, as well as of all written instruments. Every part must have effect if possible; and the minor part, in providing for the application of the proceeds as far as debts exist, cannot, according to any sound reasoning or sound rule of construction, control the major part of the act providing for the saving of all the assets. This construction, too, leads to the absurdity, that the debtors of one corporation, under the practical operation of the same general law, and upon the rendition of the same judgment, may be released from their debts where there are no creditors, contrary to the express enactment of the law, and on the other hand, that the debtors of another corporation have to pay their obligations "to the uttermost farthing," where the corporation is insolvent, as in most instances in this State. So, in the case of the same bank, one portion of the debtors would pay and the others would not! Such an interpretation must be unavoidable before it can be adopted. No one can examine the eighth section of the statute, without being convinced that the legislature intended to preserve, and did preserve the entire assets for the benefit of those entitled to them. No one can read the entire provision, with a view to arrive at the conclusion of the opposite counsel, without asking whether, if the legislature had intended to have saved from extinguishment only a sufficient portion of the

26 *

assets to pay the creditors, they would not have so expressed themselves; whether, instead of saving all the debts and property, they would not have confined the provision to the conditional, qualified saving contended for. If the legislature had intended what the opposite counsel contend for, they would have so expressed it, by not releasing the debtors, and appointing the trustee to take charge of the assets and to collect the debts, to the extent necessary to pay the debts of the bank, and no farther. This, or something of this character would have been the language of the legislature, and such a clause must be virtually interpolated into the act before the views of the opposite counsel can prevail.

If the particular expression, as to the payment of the debts of the bank, is to control all the other general provisions of the law, if we are thus to stick in the bark, how are the expenses of Robertson's administration of the estate of the bank to be defrayed?

The ninth section provides that the compensation allowed to the trustee shall be paid in preference to all others, but I allude to court costs, counsel fees, and various other charges. It might just as well be contended, that no collections can be made to meet such costs and charges, arising after the forfeiture of the charter, because the legislature merely directed the payment of the debts of the bank, out of the proceeds, as might thereafter be directed by law. Counsel will not pretend that these costs and charges are covered by the law, and at the same time that it does not save the assets, after paying creditors, for the stockholders. It might be contended as plausibly that, if a law of this State provided that upon the conviction and execution of a citizen for treason or any other offence, his property should not be confiscated nor his debts released as at common law, but that a trustee should be appointed to take charge of his estate, and sue for and collect the debts, and the proceeds, when realized, to be applied to the payment of the debts of the deceased, the trust determined, and the debtors who had not paid were released the moment the creditors were paid, and the heirs and distributees of the deceased were not entitled to the residue of the estate.

Suppose the bank, during her corporate existence, had made an assignment of all its assets to a trustee, to take charge of them, to sue for and collect all the debts due it, and to sell all the real and personal estate, and the proceeds to apply to the payment of the debts of the bank, as might be thereafter directed by the bank; or suppose such a deed of trust by an individual. No disposition of the surplus is made. What becomes of it after the payment of the creditors? It must be paid over to the bank, if in existence, for the stockholders, or if not in existence, to the stockholders directly by the trustee in the one case; and to the individual making the deed of trust, or his representative if he be dead, in the other. And such is the effect of the legal assignment to Robertson by virtue of the act of 1843; such the course the assets must take. Counsel cannot show a distinction, or a reason for a distinction in the cases, why the meaning of the language used by the legislature would not be the same with that of a deed or other instrument containing the same provisions.

This court, in its opinion in the Chambers case, reasons very differently from the opposite counsel on this point.

It is true, the court confines its remarks to the rights of creditors; it does not remark on the rights of stockholders *eo nomine*. But the position held by the court will apply equally to stockholders. The legislature made an appropriation in favor of creditors, — it could not. Their rights are independent of this direction for their payment. All the legislature could do was to save the assets from extinguishment. Their destiny was irrevocably fixed without farther legislation. Equity disposes of them, upon principles of justice, according to the rights and interests of the respective parties interested in the fund. These principles are well defined, and as familiar to every citizen as to the jurist. The claims of the creditors in the first instance are paramount, and the assets are sometimes regarded as a trust fund for their payment. But whether that be true to the full extent of a strict trust or not, says this court in the case just cited, is not material. It is enough if it be a fund which equity would appropriate to the benefit of creditors. After the creditors have been fully paid, the stockholders, who

have parted with their money, invested it in the bank, and which money and its proceeds, in the course of the business operations of the bank, loaned out to individuals, are the source, as we all know, of all the debts due the bank. The debtors became such, by having loaned to them, through a board of directors or some other agency, the moneys, in the bank, of the stockholders, or by having purchased property of the bank, (the property of the stockholders,) subject only to the prior claim of creditors. And equity, after the payment of the creditors, appropriates the surplus to the stockholders. Their rights are of as high and as sacred a nature, in the eye of the law, as that of the creditor, and the only difference that can be shown by any respectable authority in England or America is, that the creditor shall be first paid. Technically speaking, the stockholder is not a creditor of the bank, but in equity he is as to the assets and as to the debtors of the bank, and is in the order of payment merely secondary to the creditors. If there had been no creditor, or if after paying them, the surplus would pay the stockholders more than they subscribed and paid in with interest, they are entitled to it, according to all the authorities and upon every principle of equity, upon the assets having been saved by the act of 1843. The obligation, the trust, the equity, or whatever you may call it, which compels the debtor to pay what he owes the bank, is the same in favor of the stockholder, as in favor of the creditor. No one who will analyze and fully reflect on the relation, character, rights, obligations, and duties of these three parties, the creditor, stockholder, and debtor, in connection with each other, can come to any other conclusion.

If the court, in deciding the Chambers case, did not touch on the rights of the stockholders, after the payment of the creditors, a subject not then, nor now, to be decided by the court, no argument can be drawn from the decision against the just claims of the stockholders. The language of the court, which I have cited, and the whole train of the decisions of this court on the subject, from the Rodney Bank case to this day, are, in spirit and effect, in conformity with the views I have expressed. To say that this court must have intended to exclude the stockholders from the benefit of the saving provisions of the act of

1843, because they are not particularly named, throughout the decisions, with the creditors, is the same reasoning of the opposite counsel, which they apply to the act of 1843, in directing the trustee to pay the creditors, and not the stockholders ; and in my humble opinion amounts to nothing, especially as this court shows that this expression in the act amounts to nothing whatever.

The late Chancellor Kent, in his well-matured opinion on this very statute, is most clear.  I am of opinion, said this profound jurist, " that, upon a fair construction of the provisions of the act of 1843, the trustee appointed under it has the power to sue, in his own name, or otherwise, as trustee, the debtors of the corporation for which he is appointed, and collect the debts due to the bank, and sell and dispose of all the property of the bank, and apply the proceeds of the debts and other assets to the payment of the debts of the bank, and distribute the surplus among the stockholders.   Those powers are clearly granted by the act, and appear to me to leave no room for doubt or difficulty.  The provision in the act for the appointment of a trustee in the given case, would necessarily imply such a power, without the express grant of it."

Again : " The idea is not to be indulged or conceded, that the jurisprudence of the State of Mississippi, or that throughout the United States, is so lame and defective, as not to take due and sufficient care of the appropriation of the assets of the bank to the just demands of creditors, and eventually of stockholders." 6 S. & M. R. 518.

Both Chancellor Kent and this court adopt with marked approbation, the decision of the Supreme Court of the United States, in the case of *Mumma* v. *Potomac Company*, 8 Peters, 281, recognizing the principle that the obligations of the debtors survive the dissolution of the corporation, and the assets remain in trust for creditors and stockholders.   6 S. & M. 520, 558. But I shall cite no farther authorities on this point, at least till one shall be produced on the other side, showing that it has ever been decided, that where the assets have been preserved, the stockholders are not entitled to them after paying all debts and expenses.

Coulter et al. *v.* Robertson.

I, however, will state a case, as I might state many, analogous in every respect to the present in principle, in illustration and support of my position. I refer to the bankrupt law. As far as I have examined the provisions of the late bankrupt law of the United States, there is no disposition made of any surplus that might exist after paying off the creditors and defraying the expenses. Suppose, as has happened in some cases, there should be a residuum of the bankrupt's estate, after discharging all the debts and expenses, what becomes of it? By the provision of the law, which is as strong as language can be, the bankrupt, whether voluntary or involuntary, is, upon the appointment of the assignee, absolutely divested of all his property and rights of property, and by the operation of law, the assets vest, *ipso facto*, in the assignee. This court itself has used this example in the Nevitt case, showing that the assignee stands in the place of the bankrupt, as to the collection and disbursement of the assets, to illustrate its position, that the effects of the bank which is dissolved pass as by assignment. Now, is the residuum in the bankrupt case to be distributed among the debtors? Are those who have not paid the assignee, to have the benefit of not paying? Is the assignee to hold on to the residuum? No. The bankrupt, or in the event of his death, his representatives, are, upon principles of equity as well as of law, entitled to the surplus.

Let us now examine the other provisions of the law of 1843, as well as other legislation of this State on the same subject, and see whether it is not throughout in keeping with these views; and if so, it must, according to all acknowledged rules in construing statutes, be conclusive. Let me, however, refer in the first place to the rule of construction, and I cannot do so more briefly than in the language of Judge Wayne, in delivering the opinion of the court in the case of the *United States* v. *Freeman*, 3 How. R. 564. "The correct rule of interpretation is, that if divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them, and it is an established rule of law, that all acts in *pari materiâ* are to be taken together, as if they were one law. Doug. 30; 2 Term Rep. 387, 586; 4 Maule & Selw. 210. If a

thing contained in a subsequent statute, be within the reason of a former statute, it shall be taken to be within the meaning of that statute. Lord Raym. 1028. And if it can be gathered from a subsequent statute *in pari materiâ*, what meaning the legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning; and will govern the construction of the first statute. *Morris* v. *Mullon*, 6 Barn. & Cress. 454; 7 Barn. & Cress. 99. Wherever any words of a statute are doubtful or obscure, the intention of the legislature is to be resorted to, in order to find the meaning of the words. *Wimbish* vs. *Tailbois*, Plowd. 57." " In doubtful cases, a court should compare all the parts of a statute, and different statutes in *pari materiâ*, to ascertain the intention of the legislature." So in 1 Brockenb. C. C. Rep. 162: " In the construction of statutes, one part must be construed by another. In order to test the legislative intention, the whole statute must be inspected."

With these principles before us, let me ask the court's attention to the ninth section of the act of 1843, regarding the trustee's bond. The condition is that he shall diligently and faithfully collect the debts due the bank, sell and dispose of the property belonging to the same, and the proceeds, when collected, to pay over as may hereafter be directed by law.

The obligation on the trustee is to collect the debts and sell the property, without limitation or qualification, and generally to pay over the proceeds as thereafter directed by law, not limiting the application of the proceeds to the debts due by the bank. Upon a breach of the condition of this bond, the trustee would be as liable to a stockholder as to a creditor, after the payment of creditors. So the 10th section makes it a penitentiary offence, if a trustee shall embezzle or refuse to pay over to his successor in office any of the proceeds or assets of the bank; thus showing on the part of the legislature throughout, their intention of having collected by the trustee the entire assets; and holding him accountable for the same, and the disposition thereof.

But when we come to the act of February 28th, 1846, being an act to amend the act of 1843, it seems to me that it ought

to end discussion as to the legislative intent on the question. This act provides for a sale of all the debts, property, and assets of the bank; no reservation of any evidences of debt or property from sale, whether there be a single creditor or many, whether there be a surplus after paying creditors or not, and for a distribution of the money in the hands of the trustee.

1. The expenses of the trust shall be paid.

2. The debts due State or county.

3. All sums of money due by the bank for costs.

4. A ratable distribution among the creditors.

5. A ratable distribution of the surplus, if any, among the stockholders.

Here, then, is the mode laid down by this act for the distribution of the proceeds, as intended by the legislature in the act of 1843; and, in the distribution, the stockholders are expressly entitled to the surplus. Now, whether the legislature had any power to order the distribution, or whether a court of equity interposes upon the appointment of the trustee, and disposes of the assets when reduced to money by the trustee, can make no difference. For the legislature has but followed equity in this respect; and the distribution directed by the legislature is substantially as a court of equity would order it.

But this court has pronounced the 4th section of the act directing a sale of the debts due to the bank at auction, to be unconstitutional and void as to trustees appointed before the passage of the act. This is so; a portion of the act is unconstitutional and void; but that does not interfere with it as an exposition of the legislative meaning of the act of 1843. One part of the statute may be unconstitutional, another part defective; but its effect, in assisting us to arrive at a correct understanding of the will or mind of the legislature, is the same as if all its provisions were unexceptionable. The seventh section, directing the mode of distribution, is as decisive in construing the law of 1843 in reference to the rights of stockholders, as if the 4th section, regarding the sale of the evidences of debt, were not in the amendatory law. It is an expression of the legislative meaning of the former act.

Again. The act of February 21, 1840, Hutch. Code, 324,

328, § 10, provides for the forfeiture of a charter of a bank, upon the proclamation of the governor, upon proof of the non-payment of a liability. But the same section provides that the corporation shall retain and use its corporate name for the purpose of winding up and liquidating its affairs. So the 16th section provides a mode for banks to surrender their charters; and that such banks shall retain the powers of their charters, for the purposes of liquidation, for a period not exceeding eight years. There is no express provision for either the payment of debts, or of the surplus among stockholders. Yet such is the operation of the act. No one doubts that, under its provisions, the creditors and stockholders would be entitled to the entire fund; and it is but another instance of the legislative intent to save the assets of corporations from the consequences of the common law rule.

So in the act of the 23d February, 1844, for putting the Planters Bank and the Mississippi Railroad Company in liquidation, it is expressly declared that, after the payment of the bonds and the creditors, any remaining surplus "shall be paid to the respective stockholders, according to their respective legal rights." Hutch. Code, 319–322, § 5.

And in regard to the old Bank of Mississippi, whose charter expired, by its own limitation, on the last day of December, 1834, the legislature passed several acts continuing the charter of the bank for the purposes of liquidation, saving the assets for the payment of the creditors, and for the benefit of the stockholders. These acts were passed in 1831, c. 90; 1839, c. 69, and in 1841, c. 71.

The whole series of acts manifests the same object, the same purpose,—to preserve the funds, on the dissolution of the corporation, for creditors and stockholders. Not a single exception is to be found, that I am aware of, on our statute book. Upon an examination, therefore, of the entire legislation of the State, the conclusion is irresistible, that the legislature, by the law of 1843, protected the rights and interests of stockholders, as well as creditors,—performed their whole duty, so that, in winding up the affairs of a dissolved corporation, justice should be done to all the parties interested. Yet the court is now called upon

to disregard the comprehensive provisions of the act of 1843, as well as the uniform and repeated legislation of this State upon the same subject matter; and to set at nought the express provisions of the act of 1846, contrary to the spirit of the decisions of this court, and to the views of such enlightened jurists as Kent, Story, and others of equal weight. And for what purpose? That debtors may be absolved from the payment of their just debts. How different the opinion of Judge Story, in the case of *Wood* v. *Dummer et al.* 3 Mason, R. 310. " The billholders and other creditors have the first claim on the capital stock; and the stockholders have no right till the other creditors are satisfied. They have the full benefit of all the profits made by the establishment, and cannot take away any portion of the fund until all the other claims upon it are extinguished. Their rights are not to the capital stock, but to the residuum, after all demands on it are paid. On a dissolution of a corporation, the billholders and stockholders have each equitable claims, but those of the billholders possess a prior equity." 15 Mass. R. 505–522; 16 Ib. 9, 15; *Robinson* v. *Smith*, 3 Paige, R. 232; *Gray* v. *Portland Bank*, 4 Mass. R. 377, 378; *Taylor* v. *Miami Imp. Co.* 5 Ohio R. 166.

Before I conclude, I will briefly notice a class of cases growing out of devises to trustees, from which the opposite counsel endeavor to draw the conclusion that Robertson's trust is determined.

The rule, as contended for, may be stated thus: That, where an estate is devised to trustees for particular purposes, the legal estate is vested in them only so long as the execution of the trust requires it; and that, as soon as the trusts are satisfied, it will vest in the person beneficially entitled to it. Now if counsel had reasoned from this, that Robertson took an estate in the assets of the bank only for the purpose of paying the creditors proper, and that, as soon as that object was accomplished, his estate was at an end, and the estate vested in the stockholders, " the persons beneficially entitled to it," I could comprehend the views of the gentlemen as to the real estate of the late bank. But to arrive at the conclusion from such premises, that on the determination of the trust for creditors,

the beneficiary is not entitled in equity to the residue, but that it is virtually extinguished, is a *non sequitur.* And whenever and however it may be attempted to apply the rule to choses in action, — a term for years, a life estate, a qualified legal estate in debts, — I know that I shall never be able to perceive the remotest analogy or application.

It will be found that courts, in construing devises to trustees, are governed by the same rules which prevail in the construction of all other contracts. The meaning of the instrument is to be ascertained from a fair interpretation of its contents. If the court is of the opinion that the writing conveys an estate only sufficient for the fulfilment of the trust, the court will decide that the trustee takes that estate, and no more. But if, on the other hand, the writing, upon a fair construction of it, conveys a greater estate to the trustees than is necessary for the execution of the trust, then a greater estate vests in the trustees, whether necessary for the fulfilment of the trusts or not.

A well considered case on this subject will be found in 31 Eng. Cond. L. R. 143, (4 Adol. & El. 582,) *Doe, ex dem. Shelly* v. *Edlin.* Chief Justice Denman, referring to the rule, remarks that, " if it be meant to apply to all cases in general where the trusts are no longer capable of being carried into effect, but yet the instrument, by the legal construction of it, already gave an estate, which might continue for a longer period than that during which the object of the trust had an actual existence, then that, in my mind, will admit of a different consideration." The chief justice, in delivering the judgment of the court, states, " that he would not say what would be the case as to a lapse in a case of a pure naked trust, where the trustee was a mere nominal party to keep the legal estate in him, to prevent it going to the *cestuis que trust,* and the trustee had no duties to perform; but this is a trust where duties are cast upon the trustee; he is to receive the rents and profits; and, therefore, if rent becomes due the day after the death of the devisor, or if a field of hay or corn be to be cut, his duty is to possess himself of them. If there be no person named in the will to receive them, a court of equity must say what is to be done with

them." And the court decides that the trustee took an absolute legal fee.

A similar judgment is pronounced by the same court of King's Bench, in the case of *Doe ex dem. Cadoga* v. *Ewart,* 34 Eng. Cond. L. R. 187, 202 (7 Adol. & El. 636). It is a lengthy case, and the opinion of the court very elaborate. In reference to the estate of the trustees in that case, the court, among other things, say: "As the will does not confine their power to sell so much as should be sufficient to pay the debts, and also as there is no devise over of such parts as should remain unsold, we are of opinion that the trustees retained the fee simple created by the will in the whole of the estates of the testator." It is true that the beginning of the language of the power to sell says any part of the estate, and does not say the whole or any part; but the latter part says the same premises, or any part thereof; and we think the legal effect of this covers the whole." Lord Hardwicke's opinion in a like case, *Bagshaw* v. *Spencer,* 1 Vezey, sen. 143.

Let me cite another authority, *Middleton* v. *Spicer,* 1 Brown, Ch. R. 201. In that case, there was a fund in the hands of executors, which the testator had bequeathed to them to hold in trust to pay to the society for the propagation of the gospel. The bequest was decreed to be void, and there were no next of kin. The question arose, whether the crown or the executor was entitled in equity to be the beneficiary. No one thought of raising a question as to the legal title. As said by Lord Thurlow, in the opinion in the case, "the devise vests the legal property in the executor." The legal estate must remain in him, unless there is a claim against him which affects his conscience; and the court decided in favor of the crown, and "that the executor is as much trustee for the crown, as he would have been for any of the next of kin, if they could have been discovered."

[The following brief was made by G. S. Yerger, Esq., in the case of *Dahlgren* v. *Robertson,* on the same points as are involved in this case, as one of the counsel for Robertson.]

*Geo. S. Yerger,* on the same side.

The only question, in fact, is, whether the act of 1843 does away the effect, at common law, of a dissolution of a corporation; or, in other words, whether the rights and liabilities of the bank, as to both creditors and stockholders, are not in full existence; and whether both creditors and stockholders have not a right to the property, the creditors to be first paid.

A long, able, but fallacious argument has been made on the other side, all of which resolves itself into this: that, at common law, on the dissolution of a corporation, debts due to and from it were extinguished; its real property reverted to the donor, its personal went to the State, and that the act of 1843 only modified this rule; that it only saved from extinguishment debts due to the bank, to pay debts due from it; that, consequently, the liabilities of the bank to creditors, not its liabilities to stockholders, were saved from extinguishment. This point being assumed, an argument is made, to show that the liability of the bank to stockholders being extinguished, a trust necessarily resulted to the debtors themselves, and, therefore, Robertson's trust was satisfied.

Our position is this: that the act of 1843 repeals the common law rule, which did not allow a trustee or representative to a defunct corporation; that it provides a person to whom all the beneficial interests of the bank are assigned by operation of law; that this assignment takes place at the moment the judgment of forfeiture is pronounced, and is a consequent of that judgment; that, by operation of this law, the debts due to the bank are extinguished; that its real property does not revert, for there is a person capable of taking it; that its personal property does not go to the State, for want of a legal owner, because the trustee is the legal owner; and that the debts and property, being saved from the operation of the common law rule, it follows, as an inevitable consequence, that all existing rights on the fund are preserved also, and must be satisfied out of it, according to their obligations and priority.

The whole of Judge Boyd's argument is predicated on this: that, by the 8th section of the act of 1843, "the debts due to the bank are declared not to be extinguished," &c., but that they and all its property shall be vested in a trustee to sell and

27 *

collect; also, that the subsequent part of the section, which says the proceeds of the property when sold, and of the debts when collected, shall be applied to the payment of the debts of such bank as may be hereafter directed by law, qualifies the first, and shows it was the intention of the legislature to save from extinguishment only debts due to and from it, not liabilities of any other kind whatever.

The fallacy of this argument is apparent. The veil is so transparent, that the legal eye penetrates through it at once. It in fact assumes that a fund on which rights attached before the dissolution of the bank may be saved by the legislature appointing a trustee or representative, but yet that the legislature have the power to modify the existing rights against the fund, and that they have so modified it as to exclude the pre-existing rights of the stockholders. It is admitted that the legislature have no interest in the fund, that they cannot declare its trusts; and yet, in the same breath, it is argued that they have only modified the common law rule, that they have saved the fund, but only for a particular purpose, to wit, to pay creditors.

We say, in the first place, that such is not the fair import of the act of 1843; and if it was, if it had said in express words, "this fund is saved for creditors alone, not for stockholders," it would be, as to this part of it, unconstitutional and void, as divesting rights, attached to the fund, in the hands of the assignee.

The whole argument, on the other side, is the result of misconception. Obligations to and from a corporation are not extinguished, so far as the obligation of the contract is concerned, by its death; they are extinguished only for want of a person to sue and be sued, which the common law did not provide; the extinction, therefore, operated on the remedy, not on the right.

The only legislative power the legislature had, was to alter the common law, by providing a representative or person in whom the estate should pass. It had no right to alter or modify preëxisting obligations, or liens; it could not make new contracts; its power was simply legislative. The moment it provided a person to whom the legal estate passed, that moment

the common law consequences were done away; that moment all obligations, trusts, liens, &c., according to the obligations of the contracts, as they existed in the lifetime of the corporation, were preserved, and attached, according to the existing law, upon the fund in the hands of the assignee. Can the legislature say, we authorize a trustee to be appointed, in whom the legal estate shall vest, and yet annex a condition, that equities and rights of contract against the fund shall cease? No legal mind can say no. And yet this is "the whole of the seven hours' concluding argument in this case."

1. The first point I assume is, that the obligation of contracts does not cease with the dissolution of a corporation, but only from necessity they cannot be enforced, as there is nobody on whom the legal title is cast. *Potomac Company* v. *Mumma*, 8 Peters, 281; *Blakely* v. *Farmers Bank*, 17 Serg. & Rawl. 65; particularly *Nevitt* v. *Bank of Port Gibson*, 6 S. & M. 558, 559, 561; *Comm'l Bank* v. *Chambers*, 8 S. & M. 47, 48, 49, 50, 51, 54.

2. The second position I assume is, that by operation of the act of 1843, all the debts due to the bank, without exception, are saved from extinguishment, not only by the express words of the act, but by the appointment of a trustee in whom all the legal estate is vested.

That the legal estate is vested in him, that it is not a bare power, is settled beyond dispute (6 S. & M. 529, 530, 566, 573; 8 Ib. 49, 50, 51, 73, 76); otherwise he could not sue at law.

The act of 1843 operates as a transfer of only the beneficial interest by operation of law, like a bankrupt statute, or statute empowering the appointment of administrators. This is expressly decided in Nevitt's case.

3. But it is necessary to see what would be the rights of the creditors and stockholders against this fund, during the existence of the bank. Upon its winding up its affairs, the creditors of the bank are first to be paid out of its assets. When they are paid, the surplus, by law, belongs to the stockholders. 12 Met. R. 385; 3 Paige's Ch. R. 332, 333; 10 Paige, 547; 5 Ohio, 167; *Mumma* v. *Potomac Co.* 8 Peters, 281; *Wood* v. *Dummer*, 3 Mason, R. 310, &c. These are the rights of creditors and stockholders during its existence.

Now suppose all the effects of a bank were transferred to trustees, to wind up its affairs and pay its debts, and nothing was said about the stockholders when the trustee paid the debts, to whom would the surplus belong in equity? The stockholders. Could they not sue the trustee for it in equity? Is this not their right? Can this right be taken from them during its existence? Now suppose, before the stockholders recover the surplus against the trustee the bank is dissolved; will this take away the right? Unquestionably not. Why? Because they have a vested right in property, the legal interest of which is not, and was not, in the bank. The death of the bank does not, at the time of its dissolution, affect the question; for her legal title was previously assigned. The trustee was in existence. He could sue and recover the debts; he could be sued; the creditors and stockholders could follow the fund in his hands, although the bank was dissolved. This was the precise point decided in Mumma's case. See the case stated, and this shown, in 6 S. & M. 558. There, the Potomac Company surrendered its charter, &c., and its assets passed to the Chesapeake Company. The court say, "the obligation of the contracts of the Potomac Company survive, and the creditors of the Potomac Company survive, and the creditors may enforce their claims against property of the corporation, not passed into the hands of bonâ fide purchasers, but held in trust for the corporation, or its stockholders," &c.

When the old Bank of the United States expired, in 1808, previous to its dissolution it assigned all its effects to trustees, to wind up, &c. No person objected to the stockholders being paid the surplus. See *Lennex* v. *Roberts*, 2 Wheat. 376.

From the foregoing principles it follows, that the obligation of contracts, for or against corporations, the obligation of trusts, express or implied, the enforcement of resulting trusts, in fact all vested rights, for or against corporate property, exist, and may be enforced where there are persons in whom the legal rights of the corporation vest by law, after its death.

Before the dissolution of the corporation, and by operation of law, all of its property vested in Robertson, that is, all it was

beneficially interested in. All rights which, by the existing law, attached to this property, followed it in his hands. The creditors in equity had a right to it before the stockholders; the stockholders had a right to the surplus. These rights were not extinguished, because the fund being saved, existing rights against that fund must, of necessity, be saved, whether the legislature say so or not. Robertson is declared a trustee. As such, he cannot take in his own right; he can only take as trustee for those who have equitable rights, that is, creditors first, and then stockholders, if any thing is left.

There never was a time when the debts were extinguished; there never was a time when the property reverted, or vested in the State. The moment the law provided there should not be an extinguishment, and appointed a trustee, that moment all existing rights attached, and could be enforced.

The argument is, that the legislature declared the debts due from the bank should be paid; *ergo*, this saved only the rights of creditors against the bank from extinguishment, but no other rights whatever; *ergo*, the rights of stockholders are not saved. To disprove this, we put this case : The bank, by contract, agreed to sell a tract of land, and entered into an agreement; the purchaser paid the money; the bank is dissolved; a trustee appointed, in whom the legal title is vested; but rights of creditors against the bank are only saved; the purchaser is not a creditor : is his right to proceed against the land, in the hands of the trustee, gone ? " All rights against the bank are extinguished, except those saved." " In this consists the modification of the common law." Now will any man doubt but what this land, in the hands of the trustee, is subject to the claim ?

The law gives the stockholders the right to the surplus. This surplus cannot be collected for want of a person to represent them in the court. But when there is a person in whom the suits can be revived and carried on, then the common law has nothing to do with the case, and all rights upon the fund can be enforced, and the legislature cannot prevent it without a violation of the constitution.

If the legislature saved the debts, and appointed a trustee, all vested rights immediately attached; and if the said creditors

should be paid, and all other rights abrogated, it would be unconstitutional and void.

But the legislature have not said so. Such a construction cannot be given to the act; they have saved all the assets; they have directed, with the proceeds, the debts shall be paid; (if there is a surplus, they have said nothing about it;) that is, left it to the law, and the law, we have seen, gives it to the stockholder, because it is a vested right.

The legislature may withhold all remedy; it may refuse to authorize a trustee to be appointed. But if it does, it cannot alter existing rights, or impose conditions which would violate previous rights. See 6 S. & M. 531. The moment they are saved, says Chief Justice Sharkey, their destiny is fixed. 8 S. & M. 48, 49, 50, 52, 53, 54, 59.

But the act is too explicit even to be argued. It saves all, not a part of the debts. All, not a part of the property, is vested in the trustee. No exception is made. The effect of this is, to save all due to the bank. No part of the act, in express terms, saves debts or rights due from it. But this, as the court say in 8 S. & M., is the necessary consequence of saving the fund. From the direction to pay the debts, we may infer, debts due to it were intended to be saved; from saving all the fund, and not a part, we may equally infer, all rights against the fund were to be saved.

But it is not a matter of inference; it is a matter of law. We say, when there is a fund not extinguished, assigned to another, common sense, as well as common law, would tell us that all legal and equitable rights against that fund are necessarily saved with it.

*Bacon* v. *Cohea*, 12 S. & M., is cited to show that the effects were saved for the benefit of the creditors, &c. So they were. The rights of the stockholders were not before the court in that case, and the general expressions must be confined to the case before the court.

In fact, the whole argument in this case has been an assumption. It has been assumed as a fact, that the rights of creditors against the bank, but not stockholders, were saved, simply because the legislature directed the debts to be paid. But, like

Coulter et al. *v.* Robertson.

the operation of the bankrupt act, all the effects of the debtor, the bank, we contend are vested in the trustees; they took it subject to existing equities and trusts. 2 Story's Rep. 363; Owen on Bankruptcy, 58.

I regard the authorities cited by counsel as inapplicable. In fact, supposing them to prove what they cite them for, to wit, that where a trust is created, and has been fulfilled or performed, there is no longer any property or right in the trustees; they still prove nothing, unless it is shown that the stockholders have no rights; for if, according to the true construction of the act of 1843, the trustee holds the property, with all existing rights upon it, then, of course, he is a trustee for creditors first, and for stockholders for the surplus; consequently, the trust is not satisfied until they are paid; so that, if our views are right, these cases have no application.

I ask the court to calmly examine the act of 1843, and the construction put on it by this court in the cases cited. The principles decided in these cases are not merely *dicta,*—they settle conclusively this case. Thus the matter stands on authority. In addition, we have the well considered opinion of Chancellor Kent. He thinks the act is clear.

Its justice is apparent. Morality is shocked at the existence of a law which should exempt men from their obligations. Hence, nearly all the States have passed similar laws; they are remedial statutes, and must be construed liberally, to support existing rights.

In conclusion, I have proved these propositions:—

1. That, under the act of 1843, and by virtue of its provisions, the debts due to and from the bank were not extinguished.

2. That, by operation of law, they were transferred to Robertson, and the legal title vested in him, as assignee in law, or trustee.

3. That the capital stock of a bank is a trust fund in equity, for payment of debts first; and the surplus in equity is in trust for the stockholders.

4. This fund, in the hands of an assignee in law, is subject

to all existing rights; and a law of the legislature, divesting these rights, would be unconstitutional.

5. This being so, it necessarily follows, that the right of the creditors to be paid first, and of the stockholders to the surplus, having attached by law to the fund, before the dissolution of the bank, these rights go with it into the hands of its represent-ative, the trustees.

6. That the declaration of the legislature, that the debts should be paid, did not divest the right of the stockholders to the surplus; and if it did, the legislature had no such power; it was unconstitutional and void.

*T. C. Tupper*, on the same side, filed an elaborate brief.

*Geo. L. Potter*, on the same side, argued the case orally.

The opinion of the court was delivered by Mr. Chief Justice SMITH.

A judgment of forfeiture was pronounced against the late Commercial Bank of Natchez upon an information in the nature of a *quo warranto*, instituted under the provisions of the statute regulating the mode of proceeding against incorporated banks for a violation of their charters.

William Robertson was appointed trustee, and as such brought suit against the plaintiffs in error, on a note made by their testator, which was the property of the dissolved corpora-tion, at the time when the judgment of forfeiture was rendered.

The demurrer to the second and third pleas of the defendants in the court below, presents the questions which it becomes our duty to investigate. For the present, we will direct our atten-tion to that which arises on the demurrer to the second plea. In its general form, the question thus raised is this: Had Rob-ertson, the trustee, title to sue? Could he maintain an action on the note?

In the discussion of this proposition, two points of inquiry naturally suggest themselves. 1st. Whether a full payment of the debts due by the bank, at the date of its dissolution, or the

collection from the assets of an amount of money sufficient for that purpose by the trustee, was a full and complete execution of his trust, whereby he became *functus officio ?* 2d. Whether the trusts which had vested in Robertson were, in reality, terminated by the payment of the whole of the debts of the bank, or by the collection of funds by him sufficient for that purpose, such matter constituted the basis of a valid defence, of which the defendants below had a right to avail themselves in bar of a recovery?

1. The effects or consequences at common law of a judgment of forfeiture, rendered against a corporation, have been materially modified by the legislation of this State. Hence, to enable us to respond to the first inquiry a distinct perception, as well of the consequences which followed at common law upon a judgment of forfeiture against a corporation, as of the changes produced by the statutes of our own State, is essential.

The elementary books and the numerous cases decided, are uniform in their language in regard to the consequences resulting from the dissolution of a corporation. They held that upon the death of a corporation, all its real estate remaining unsold, reverts back to the original grantor and his heirs. The debts due to and from the corporation are all extinguished. Neither the stockholders, nor the directors, nor trustees of the corporation, can recover those debts, or be chargeable with them in their natural character. All the personal estate of the corporation vests in the crown, with us, in the people of the State, as succeeding, in this respect, to the rights and prerogatives of the king. Co. Lit. 13 *b.*; 1 Black. Comm. 484; Angell & Ames on Corp. 513; 3 Burr. Rep. 1868; *Commercial Bank* v. *Lockwood,* 2 Harr. 8; 1 Blackf. Rep. 283; *Fox* v. *Horah,* 1 N. C. Rep. 353; 2 Kent, Comm. 309.

This we understand to be the settled doctrine of this court. It was said by the late learned chief justice, in delivering the opinion of the court, in the case of the *Commercial Bank of Natchez* v. *Chambers,* that it had been urged "in argument with much plausibility, that even without the interposition of the legislature, the debts due to and from the bank would have survived its dissolution; that these commercial corporations

should be regarded as partnerships, and the fund or property owned by them, a trust fund which equity would appropriate to the payment of their debts. The current of decisions seems to have fallen into a different channel, and it may now be regarded as the settled doctrine, that on the dissolution of a banking corporation, the debts due to and from it are extinguished; not by an implied condition in the contract, but from necessity, because there is no person in whose favor or against whom they can be enforced."

Following the suggestion to which the remarks above quoted are a reply, counsel upon the argument of this cause assumed, and have sustained the assumption with great ingenuity, that the obligation of contracts entered into by a corporation, does not cease upon its dissolution, but continues unimpaired. And the reason assigned why they cannot be enforced is this, there is no person appointed in whom the legal title vests. In other words, that the contracts continue in force, but the remedy has been lost by the dissolution of the corporation.

We do not assent to the proposition, and believe it to be unsustained by authority. There is an obvious distinction between mere credits or debts due by contract unaccompanied with a lien upon property, either general or special, and real estate, and goods and chattels. The latter are matters of substance. They have not merely an ideal being, but an actual existence; hence, they may subsist independent of any ownership, either in being or expectancy. As it is not essential to their existence that there should be an owner, they are not annihilated by the extinction of the corporation to which they previously belonged, but pass upon its dissolution into the hands of those who may take them. "As they retain their being and remain the subjects of occupancy and possession, the grantor of the land can lay hold of them, and the State, through its proper agent, can take possession of the goods and chattels which belonged to such corporation. But such is not the condition or character of debts owing to such corporation; they are merely rights which rest in action, — they have an ideal but not an actual existence, — they are neither tangible nor the subjects of occupancy or possession." 2 Harr. R. 13. A debtor and a

Coulter et al. *v.* Robertson.

creditor are essential to the very existence of a debt. There can be neither a debt nor an obligation without there be in actual being or in expectancy with a legal possibility of an actual existence, a person by whom the debt may be paid or the duty performed, as well as a person who may receive the payment of the debt, or accept the performance of the obligation. Wherever, therefore, the payor or payee, the debtor or the creditor, or the person by whom a duty is to be performed, or who is to accept the thing which is to be done, ceases to exist without a representative, or the legal possibility of a representative, the debt or obligation ceases to exist, and the obligation of payment or performance is forever at an end.

The case above referred to of the *Commercial Bank of Natchez* v. *Chambers,* is cited to show that the obligation of the contracts of a dissolved corporation survives its dissolution. The passage quoted from the opinion in that case distinctly announces the principle as the settled doctrine of our courts, that the debts due to and by a corporation upon its dissolution are extinguished. Not such is the condition of a debt where the debtor and creditor survive, but which has been barred by the statute of limitations. The legal remedy has been lost, but the moral right to demand payment and the obligation to pay remain. If the effect of the statute of limitations were held to extinguish the right as well as to bar the remedy, it is manifest that a subsequent promise to pay the debt would be void for want of consideration. For it must be perfectly immaterial whether if a right or debt is extinguished, the effect is produced by a statute bar, the civil or natural death of one of the parties to the contract, or by a payment itself.

The case of *Mumma* v. *The Potomac Company,* 8 Peters' Rep. 281, has been cited for the same purpose. Mumma, the plaintiff in that case, was a judgment creditor of the Potomac Company, and after its dissolution, which was affected by a surrender of its charter, issued out a writ of *scire facias* to revive his judgment. The questions presented by the record in that case were, 1st. Whether the corporate existence of the company was not destroyed so as to defeat the rights and remedies of its creditors? 2d. Whether the deed of surrender did not violate

the contracts of the company, and whether the legislative acts of Virginia and Maryland, though confirmed by the act of congress, were not on that account void? Both questions were decided against Mumma, and Judge Story, who delivered the opinion of the court, in discussing the second point says: "The obligation of those contracts, (the contracts of the defunct corporation,) survives, and the creditors may enforce their claims against any property belonging to the corporation, which has not passed into the hands of *bonâ fide* purchasers, but is still held in trust for the company or the stockholders thereof, at the time of its dissolution, in any mode permitted by the local laws." This case was cited in the opinion of this court in *Nevitt* v. *The Port Gibson Bank,* and appears to have been regarded as an authority in support of the position, that the obligation of contracts entered into by and with corporations survive their dissolution. We think upon examination it will be perceived that the import of the decision was misunderstood, and that Judge Story was very far from intending to intimate that according to the common law, upon the dissolution of a corporation, the debts due to and by it would not be extinguished.

The pleadings in that case showed that the Potomac Company, in pursuance and in execution of the provisions of the charter of the Chesapeake and Ohio Canal Company, chartered by the States of Maryland, Virginia, and by the Congress of the United States, had conveyed in due form of law to the said company, all of its property, rights, and privileges of every description whatever; and had, also, in due form, made a surrender of its charter; which transfer and surrender was accepted by the Chesapeake and Ohio Company. The acts incorporating this latter company distinctly show that the assignment or conveyance was for the benefit of its creditors and stockholders. Upon the acceptance of the transfer, an equitable lien attached to the property assigned in the hands of the Chesapeake and Ohio Canal Company in favor of the creditors of the former company; whose debts or claims against it were thus preserved from extinguishment by the provisions of the acts creating the charter of the Chesapeake and Ohio Canal Company, and providing for the transfer. Hence, it was very

properly said by the distinguished judge, that " the creditors of the Potomac Company might enforce their claims against any property belonging to the corporation which had not passed into the hands of *bonâ fide* purchasers; but was still held in trust for the company or the stockholders thereof, at the time of its dissolution, in any mode permitted by the local law."   Besides the twelfth section of the act incorporating the Chesapeake and Ohio Canal Company, makes it the duty of the president and directors of that company, so long as there shall be and remain any creditor of the Potomac Company, who shall not have vested his demand against the same in the stock of the Chesapeake and Ohio Canal Company, (which the act enables him to do,) to pay such creditor or creditors annually, such dividend or proportion of the net amount of the revenues of the Potomac Company, on an average of the last five years preceding the organization of the said Chesapeake and Ohio Canal Company, as the demand of the said creditor or creditors at that time may bear to the whole debt of $175,800, (the supposed aggregate amount of the debt of the Potomac Company)."   " So that," continues the judge, " here is provided an equitable mode of distributing the assets of the company among its creditors, by an apportionment of its revenues, in the only mode in which it could be practically done upon its dissolution."   In fact the legal title of the whole property of the Potomac Company vested in the Chesapeake and Ohio Canal Company, upon the terms prescribed by the charter, who held it in trust for the creditors and stockholders whose interests were looked to in making the arrangement.   The case was not materially different in principle from an ordinary assignment by a corporation, of its effects, for the payment of subsisting debts against it, and when, after the assignment, its corporate existence was terminated by either a surrender, a judicial forfeiture, or by the lapse of time.

The decision in the case of *Bleakney* v. *The Farmers and Mechanics Bank of Greencastle,* was cited and relied on as authority upon the same point.   Upon a careful examination, we have been unable to perceive its application.   It appears that the bank had omitted to pay, as required by law, six per cent. to the State on the amount of its dividend in November, 1819.

28 *

After this default, the bank took from Bleakney the note made by him, and on which the suit was brought. The defence was based upon the alleged dissolution of the corporation, as having been produced by the failure to pay the six per cent. upon the amount of its dividend. It was admitted that the failure to pay the six per cent. was good cause of forfeiture; but the forfeiture had not been judicially declared. No proceeding, for that purpose, had ever been instituted by the State; on the contrary, by an act of legislation the consequences of a forfeiture were in part waived, and the bank permitted to sue for and collect the debts due to it. It is true the act was passed after the cause of forfeiture had arisen. But there had been previous thereto, no judicial ascertainment of that cause; of course there had been no judgment of forfeiture pronounced against the bank. Hence, the court very properly decided that the suit could be maintained by the bank, as it is settled doctrine that a corporation is not to be deemed in law dissolved by any nonuser or misuser of its franchises, until it has been judicially declared to be so. 2 Kent, Com. 312; 8 Wendell, 645; Angell & Ames on Corp. 129, 667; *Will* v. *Jenkins,* 4 Paige, R. 481; 1 Dev. & Batt. R. 306. And this rule applies equally to cases where it is expressly declared by the law or the charter, that a corporation shall be deemed dissolved upon the commission of the acts which are declared to constitute the cause of forfeiture. Here, then, there was no actual forfeiture, but only an act committed, which was a cause of forfeiture, and which the State alone had a right to enforce. Hence there was no survivor of the obligation of contracts after a dissolution. It is manifest, if this case can be regarded as deciding any principle, except that the State may waive or insist upon the consequences of a forfeiture of a charter, it must be held to decide, not that the obligation of the contracts of a defunct banking corporation survives its extinguishment, but after a bank "charter has been forfeited and dissolved" and become "unlawful, and every note taken by such bank, null and void," it is competent for the State, by an act of the legislature, to restore the corporation, and give validity to contracts which are void *ab initio.* We presume that no such doctrine will be contended for at this day.

2. Considering it conclusively settled, that without legislative interposition upon the .dissolution of a banking corporation, the debts due to and by it are extinguished, we will proceed to inquire, to what extent and for what purposes the rules of the common law in regard to that subject have been modified by the statute law of the State.

The principal act on this subject, is the statute passed on the 20th of July, 1843, prescribing the mode of proceeding against incorporated banks for a violation of their corporate franchises. ·Hutch. Dig. 329. By the eighth section of this statute, it is provided, that " upon judgment of forfeiture against any bank or banks, corporation or corporations, person or persons pretending to· exercise corporate powers in this State, as contemplated by this act, the debtors of such bank or banks, corporation or corporations, person or persons pretending to exercise corporate privileges, shall not be released by such judgment from their debts and liabilities to the same; but it shall be the duty of the court rendering such judgment, to appoint one or more trustees to take charge of the books and assets of the same, to sue for and collect all debts due such bank or banks, corporation or corporations, person or persons pretending to exercise corporate powers, and to sell and dispose of all property owned by such bank or banks, corporation or corporations, person or persons pretending to exercise corporate powers, or held by others for its or their use; and the proceeds of the debts when collected, and of the property 'when sold, to apply as may hereafter be directed by law to the payment of the debts of such bank or banks, corporation or corporations, person or persons pretending to exercise corporate powers; provided, further, that the notes of any such bank or banks, corporation or corporations, or others pretending to exercise corporate powers, shall at all times be received in payment of debts due the same."

The principal alterations, it will be perceived, introduced by this statute, are, that by a judgment of forfeiture pronounced against a banking corporation, its debtors are not released from their debts. That a trustee shall be appointed with power to sue for and collect the debts due to the dissolved bank, and to sell and dispose of all other property belonging to it, and that

the debts when collected, and the proceeds of the sales of the property, shall be applied by the trustee to the payment of its debts, in the mode which might thereafter be directed by law.

It is manifest, that it was the chief object of the legislature by these alterations of the law in regard to corporations, as it then existed, to secure the entire assets of a dissolved banking corporation as a fund, out of which the claims of its creditors might be satisfied.

" The act, in effect," said this court in the case of *Nevitt* v. *The Port Gibson Bank,* "declares the assets of the bank to be a trust fund for the payment of the debts, and makes it the duty of trustees to collect them. This is a trust which would be enforced in a court of equity without any further legislation. Indeed, if the legislature were to attempt to apply the assets to any other purpose than the payment of the debts of the corporation, it would transcend its constitutional limits." This view of the subject was again held in the case of the *Com. Bank of Natchez* v. *Chambers,* 8 S. & M. 49. These decisions very clearly indicate the opinion of this court as to the character of the interest which vests in the creditors of a banking corporation, upon its dissolution by judgment of forfeiture, and the nature and extent of the duties and the powers which devolve upon and vest in the trustee. The assets of the bank are regarded as a trust fund, irrevocably dedicated to the payment of the debts due by the bank at the time of its dissolution. The trustee to be appointed is regarded not as a mere agent, whose authority may be revoked by the legislature; but as holding a position not unlike that of a trustee appointed by contract.

" There is a trust fund, (says the court,) a use to which it is to be applied, and a trustee to apply it." Hence the defendant in error came into possession of the assets of the bank, which are declared to be a trust fund for the payment of its creditors, and whether he should be regarded as assuming a relation strictly analogous to that of a trustee appointed by contract, or looked upon in a two-fold capacity, as an officer of the court in which the judgment of forfeiture was rendered, appointed to execute that judgment, and as an official trustee, charged by law with the performance of certain duties, and clothed with

Coulter et al. *v.* Robertson.

the authority requisite for that purpose, in either event, neither could his power nor the rights of the creditors be divested by an act of the legislature passed subsequent to the judgment of forfeiture. We may, therefore, pass the act of 1846 amending the statute above referred to, and proceed to an examination of the question whether the stockholders, as such, would be entitled to the surplus, if any should remain after the payment of the claims of the creditors.

We have shown that the obligation of the contracts entered into by and with a corporation, did not survive its dissolution, according to the principles of the common law; but that the demands of creditors and the rights of all parties having an interest in the corporate funds were thereby extinguished.

If, therefore, the stockholders have a remaining interest which would attach to the surplus, if any exist, it must be by virtue of the act of 1843. The right of the stockholders to the surplus is put upon three grounds. 1st. It is insisted that upon a liberal and equitable construction of the statute, they are entitled to it as creditors. 2d. That as the whole of the assets were saved from extinction, and vested in the trustee, they exist now in his hands, subject to all demands which existed anterior to the judgment. And 3d. That the obligation of the contracts does not cease upon the dissolution of a corporation; although they cannot be enforced, for the reason that there is no person on whom the legal title is cast. Hence it is inferred, that when the trustee is appointed, who takes a legal title, a remedy is supplied and the rights of all parties may be enforced.

This last position is based exclusively upon the idea, that independent of any legislation, the rights of the stockholders would have survived the dissolution of the bank. What we have above said on this subject, is sufficient answer thereto, and we will pass to the consideration of the question whether the stockholders, as such, under the provisions of the statute, stand in relation of creditors of the bank.

If a stockholder, as such, is a creditor, it results, necessarily; that his stock is a debt due by the bank. A very slight examination will show that such a position is absurd and untrue.

A corporation is an artificial person created by law. And in

the case of a banking corporation, is composed of the individuals who have become the owners of the stock, each of whom is thereby constituted a corporator, identified with and forming a constituent part of the corporate body. The stockholders, as such, cannot be distinguished from the corporation. Hence, where the stockholders and the incorporated company of which they are components are spoken of, reference is invariably had to one and the same collection of persons. 1 Ed. Ch. Rep. 87.

How then can the bank be the debtor of a stockholder as such on account of the stock which he owns in it? Or how can a stockholder, because he is the joint owner of the corporate fund, be a creditor of the bank, if the stock of a bank is a joint or common fund, owned by the stockholders in their corporate character, who as such, in the estimation of the law, constitute but one person. A debt is a duty or obligation which one person owes to another. The idea of a debt in the legal sense, necessarily implies the existence of two distinct persons or bodies; a debtor and a creditor. Hence, it cannot be said with greater propriety that the stockholders of a corporation because they are stockholders are its creditors, than that the members of a partnership are creditors of the firm because they are the owners of the partnership stock.

The distinction between creditors and stockholders is recognized without exception in all the books. In Ang. & Ames on Corp. it is laid down that the stockholders of an incorporated company are not the creditors of the company. In the case of *Verplank* v. *The Mercantile In. Cor.* 1 Ed. Ch. Rep. 84, which contains a very distinct explanation of the relation existing between a corporation and its stockholders, it is expressly stated that the latter are not the creditors of the corporation.

It is now the prevailing opinion, that the capital stock of banks is a pledge or trust fund for the payment of debts contracted by the bank. Beyond a doubt, it is a fund which cannot rightfully be withdrawn or diverted from that purpose. In *Wood* v. *Dummer*, 3 Mason, R. 307, which was read as an authority to show that the stockholders were creditors of the bank, this view is distinctly taken. "During the existence of the corporation," says Justice Story, "it (the capital stock) is the property of the

Coulter et al. *v.* Robertson.

corporation, and can only be applied according to its charter; that is, as a fund for the payment of its debts, upon the security of which it may discount and circulate notes." As the capital stock is pledged for the payment of debts, contracted by the banks, upon a winding up of its concerns, the creditors have a prior exclusive right to be paid out of its effects, as contradistinguished from the stockholders. And upon that ground, the court in this case decided that dividends received by the stockholders upon the amount of their stock, might be followed into their hands and applied to the payment of the debts. This is perfectly inconsistent with the idea that the stockholder as such is a creditor, or that the stock owned by him is a credit in his favor and against the bank. Indeed, upon the principles of common sense, as well as upon authority; it would seem to admit of no doubt that the stockholders, as such, are not the creditors of a bank.

But it is insisted that we should so construe the statute as to embrace within its provisions the rights of the stockholders, as well as the claims of the creditors, as such a construction would be promotive of a liberal, wise, and just policy. It is sufficient to say that considerations of such a character are entitled to weight in the construction of statutes only in cases of doubtful interpretation, and where the meaning and intention of the legislature appear to be opposed to the literal import of the language of the act.

A just as well as an enlightened policy might have dictated the propriety of shielding the stockholders as well as the creditors from the common law effects of a judgment of forfeiture. But such has not been the policy of our law. Until the act of 1843 was passed, as we have seen, creditors and stockholders were equally affected by the dissolution of the corporation. That act in terms applies to the creditors only, and in cases where the dissolution has been produced by a judgment of forfeiture; leaving the effects of a dissolution, accruing either by a surrender or by the efflux of time, to the unmodified control of the common law.

In most, if not all of the States, except the State of Mississippi, in which the legislature has deemed it expedient to repeal or modify the principles of the common law which apply on the

dissolution of a banking corporation produced by a judgment of forfeiture, express provision has been made by which the stockholders may take the surplus after the payment of debts. In this State, a different course has been pursued. The claims of the creditors are expressly protected, but not a word is said in regard to the interests of the stockholders. This circumstance is strongly indicative of the intention of the legislature. It leaves little ground to doubt that it was the intention of the legislature to leave them to their fate under the law as it had previously existed.

If the stockholders were not personally irresponsible for the debts of the bank, it would nevertheless be exceedingly unjust to permit them to share the assets of a defunct and insolvent corporation on equal terms with those who are in a strict legal sense of the term, the creditors. But such a result would inevitably follow, if the stockholders, under the act, were held to occupy that relation. It cannot be doubted that this would be the case, as the saving in the statute is for the creditors generally, without distinction or classification. They would all stand on the same platform.

Upon the whole, we do not think that it was the intention of the legislature to keep the debts alive for the benefit of the stockholders.

We now proceed to the consideration of the next assumption upon which it is maintained that the rights of the stockholders survived the dissolution of the corporation, and attach to the surplus in the hands of the trustee. We have above endeavored to show that the obligation of the contracts does not survive; in other words, that the rights and liabilities of all parties, creditors, debtors, and stockholders, become totally extinguished upon the civil death of a corporation. We have also seen that the contracts of the debtors and creditors by the act of 1843, were preserved from extinction, and that the entire assets of the bank constituted a trust fund, dedicated to the payment of the debts. We have also seen that the contracts of the debtors and creditors by the act of 1843, are preserved from extinction, and that the entire assets of the bank were established as a trust fund dedicated to the payment of the debts. We have likewise endeavored to prove that under the operation of the statute, any

Coulter et al. *v.* Robertson.

right in the stockholders to the surplus did not survive, either by an express provision for that purpose, or as embraced under the head of claims of creditors.

We have next to ascertain whether the rights of the stockholders, independent of any legislation for that purpose, attached to the fund as necessarily incident upon the preservation of the assets and the appointment of a trustee.

It is obvious that this position and the argument in support of it, proceed upon the supposition that there was a right in the stockholders unaffected by the judgment of forfeiture. If so, it undoubtedly attached. The true question, then, is, did the right survive under the operation of the act of 1843?

It will not be contended that the legislature had not the power to repeal, in whole or in part, the consequences of a judicial forfeiture. One of these consequences, as we have seen, was at common law the total extinguishment of the interest of the stockholders in the corporate property. The question, then, is, has the statute remitted that consequence, or repealed that principle of the common law by which it was produced? If it has not, by express enactment or necessary implication, then we must regard it as still in force. We have above remarked, that there is no express provision which saved the rights of the stockholders, nor any thing by which we could infer that such was the clear intention of the legislature, though not embraced in the language of the statute.

In coming to this conclusion, we have followed, as we believe, the previous and deliberate adjudications of this court. In the case of the *Commercial Bank of Natchez* v. *Chambers*, referring to the case of *Nevitt* v. *The Port Gibson Bank*, the late chief justice of this court said: " We also decided that the act, in effect, declared the assets to be a trust fund for the payment of debts which would be enforced in a court of equity, without any further legislation; and that, if the legislature were to attempt to apply them to any other purpose than the payment of the debts of the corporation, it would transcend its constitutional limits. We still adhere to this construction of the act." Again, in the same case: " When a trustee is once appointed, he is amenable to the judicial authority only. A court of chancery

may remove him for an abuse of the trust, or compel him to perform it. The title of the creditors is equally clear. It resulted, as a necessary consequence, from the declaration that the debts due the bank should not be extinguished, and that a trustee should be appointed to receive them. It was recognized and strengthened by the declaration, that the trustee should apply the proceeds to the payment of the debts of the bank. Although the act does not, in so many words, say that the debts due from the banks shall not be extinguished, yet this is the necessary consequence of what is said. The debts due the bank could have been kept alive for no other purpose; and besides, the declaration that the funds should be applied to the payment of debts, necessarily kept the claims of creditors in existence to receive the fund. So it is, too, with regard to the property; the intention was to save all for the creditors, as the property was to be converted into money."

It has been urged, that neither in the case against Chambers, nor in *Nevitt* v. *Port Gibson Bank,* was there a direct adjudication upon the right of stockholders to the surplus. This is true. There was no express reference made to that subject in either case; and it is difficult to account for the silence of the court, except upon the supposition that no such right was believed to exist; for, undoubtedly, the subject was brought to the mind of the court in both cases. Particularly in the Chambers case, in which the principal question was, whether under the act of 1843, and by the judgment of forfeiture against the Commercial Bank of Natchez, rights had not vested, which it was incompetent for the legislature to divest. In that case, the broad ground was taken by the counsel, that the common law effect of a forfeiture did not apply to trading or banking corporations, which should be regarded in the light of commercial partnerships. Hence, that the principles which would govern the contracts and rights of parties interested in the property of a partnership, would apply upon the dissolution of a banking corporation. This position received the particular notice of the court. The question was, what were the rights, and in whom were they vested, by the judgment, under the law? In examining the point as to the parties in whom rights were vested, if

Coulter et al. *v.* Robertson.

any were indeed vested in the stockholders, it is difficult to imagine how such fact escaped the attention of the court. And if it did not, it is more difficult to conceive why it was not noticed, for, as a matter of principle, it was quite as important that rights were vested in the stockholders as in the creditors. We cannot, therefore, doubt that where the court held that there could have been no other purpose in keeping the debts alive than for the payment of the debts of the bank; that the assets of the bank were, in effect, constituted a trust fund for that purpose, and that an attempt, by the legislature, to apply them to any other purpose than the payment of the debts, would be a transcending of their constitutional authority, they intended, with a full view of the subject, to decide that the creditors were the only parties whose rights were saved by the operation of the act. At all events, in yielding our assent to what we believe to be the previous deliberate judgment of this court, we do so, not only on the principle which invests the solemn adjudications of this court with a commanding authority, but from a conviction, after a patient examination, of its correctness.

Much was said on the argument with regard to the impolicy and injustice of the rule at common law, which regulates the effect of a judgment of forfeiture. It is probably true that this ancient rule is unsuited to the present altered condition of things, and in utter hostility to the more enlightened spirit of the age. Hence, that it should give way to rules, better suited to the emergent interests of society, and consequently more in accordance with the principles of an enlightened jurisprudence. But the subject has been before the legislature, who have decided it expedient to modify the rule in regard to the creditors and debtors of a bank; but have left the stockholders to their fate at common law. We are called upon neither to approve nor to condemn their course. Our business and our duty here are, to give to the laws which we are required to administer their just construction, and to apply them accordingly. We are always satisfied whenever we can effect this purpose, and cheerfully concede to another branch of the government the exclusive right to decide upon their policy or impolicy.

Having seen what were the consequences which followed at

Coulter et al. *v.* Robertson.

common law upon the dissolution of a corporation, and having ascertained how far they have been modified or repealed, we proceed to the consideration of the question which constitutes the first branch of our inquiry, to wit, whether the payment of the debts, or the realization from the assets of the bank of sufficient funds for that purpose by the trustee, was a full and complete execution of his trust, whereby he became *functus officio.*

The whole of the assets of the bank, consisting of credits or debts due to it, chattels and real estate, upon the rendition of the judgment of forfeiture, became a trust fund for the sole purpose of paying the debts due by the bank at the time of its dissolution. The debts were to be collected, and the property of all descriptions was to be sold and applied to that purpose. The defendant in error, under the appellation of " trustee," was appointed under the act to perform these duties, or to execute the trust thus created in favor of the creditors. His character and duties have been assimilated to those of a trustee appointed by contract; but it is not important to determine whether he should be regarded in that light, or rather as an officer of the court for certain purposes, and as a special statutory trustee appointed by the court, whose authority and duties are distinctly defined in the statute. Nor is it very material to determine whether, in a strictly technical sense, the legal title to the property of the bank, real and personal, vested in the trustee on his appointment, or whether the interest and title which did in fact vest, more resembled that of a sheriff in reference to chattels and lands, arising by reason of a levy of an execution, or of a receiver appointed to take charge of and administer a particular fund for specific purposes; as it is not contended that whatever was the character of the estate acquired by the trustee in the the assets, his authority was not amply sufficient to a full execution of the trust; and as it is not perceived that a different rule would be applicable in either case, in order to test the continuance of his authority.

At this point, then, the inquiry is, can the trustee, thus constituted, having paid off and discharged the whole of the debts of the bank, sue for and recover the debts which were due to it, and which are still outstanding and unpaid? We answer, that

he cannot; that his power to sue was terminated by the execution of his trust, which was fully performed when the demand of the last creditor was paid. This conclusion seems to follow from the very powers and character of the trustee. The assets of the bank, by the judgment of forfeiture, become a trust fund, constituted for the sole purpose of paying the debts of the bank. The trustee was appointed to execute the trust. In regard to the trust property, he took either a naked power or the legal estate without any beneficial interest whatever. When the debts were all paid, there was no remaining purpose or object for which his authority could be exercised. The trust having been fully performed, the objects for which his powers were conferred having been accomplished, it would seem, upon the plain principles of common sense, that his authority should also be at an end.

Again, by the dissolution of the bank, all remedy by action against it was lost; but the statute, by providing a trustee who should take charge of its effects and hold them in trust for the benefit of the creditors, furnished a means by which the creditors to the extent of the assets, might obtain satisfaction of their demands. In effect, by the appointment of the trustee with his duties and powers, a remedy was supplied to the creditors by which their claims might be enforced against the debtors and property of the defunct bank. Hence, when their last demand was paid off and discharged, the remaining creditors were released, not by reason of the judgment of forfeiture, for that effect was prevented by the statute; but because there was no person who had a right to demand payment. The creditors could not require the application of the remedy, for they had no rights to enforce. Nor could the trustee rightfully sue for the remaining debts, because he had no beneficial interest; and because it would be in the last degree absurd to permit him to employ his naked legal title for the collection of money to which neither himself, his *cestui que trust* nor any body else would be entitled. *Fox* v. *Horah,* 1 Ired. Ch. R. 358.

It is also clear upon the authority of cases decided, that the right of the trustee at law and in equity to sue for and collect

*29

the claims outstanding when the debts were paid, ceased to exist.

It is a general rule in all cases where it is doubtful what estate the trustees have in them, that the trustee is presumed to take an estate large enough to enable him to accomplish the purposes of the trust. Hence, where the estate arises by implication alone, a fee will be implied when there are trusts to be performed which require the trustee to be invested with an estate in fee in order to enable him to effectuate them. *West* v. *Hanning*, 5 East, 97 ; 3 Burr, 1886. This is the general rule as to the character or extent of the estate, where by the terms employed it is left uncertain what estate had vested.

But on the other hand, the trustee will never by construction, be held to take a greater estate than the nature of the trust demands. *Doe dem. White* v. *Simpson*, 5 East, 162 ; *Doe dem. Woodcock* v. *Barthrop*, 5 *Taunt.* 383. And even when a greater estate than is necessary for performance of their trust is devised to trustees, and there are uses limited upon that trust which may be executed by the statute, they will be construed to be executed in remainder, a particular estate only abiding in the trustees. This rule is recognized in the case above cited from East, where it is said by Lord Ellenborough, that when the purposes of a trust can be answered by a less estate than a fee simple, a greater estate than is sufficient to answer such purposes shall not be permitted to pass to the trustee; but that the uses in remainder limited on such lesser estate so given to them, shall be executed by the statue. *Doe dem. Compere* v. *Hicks*, 7 T. R. 433 ; *Curtis* v. *Price*, 12 Ves. 89.

Apply the doctrine recognized in these cases to the question under examination, and it will be clearly seen that the trustee, in regard to the real estate, was not vested with the fee.

The language of the statute is, " that he shall sell the property owned by such bank." The trustee could at most, take only a power to sell and dispose of the real property, because such power would be fully sufficient to enable him to carry into effect the purposes of the trust. His power of sale is strictly analogous to those of a sheriff or commissioner proceeding to sell by virtue of an execution levied upon lands, or in pursu-

ance of a judgment or decree of the court. The trustee was charged with the payment of the debts out of the assets. That was his trust, and his power of sale was limited by the purpose for which it was granted. Hence, when lands sufficient for the payment of the debts were sold, his further power to sell was necessarily at an end. This principle is fully recognized in the case of *Robinson* v. *Taylor*, 1 Vesey, Jr. 44, where Lord Thurlow held that " where property is given for particular purposes in trust, nothing more is subject than those purposes require." This doctrine is again distinctly recognized in *Chitty* v. *Parker*, 2 Ves. Jr., 271; *Wright* v. *Wright*, 16 Ib. 188. Indeed, it is too well settled to require the citation of authority. There is no greater reason for holding that the power of sale would continue in the trustee, after a sufficient amount to pay the debts had been realized, than there would be for continuing in the sheriff a right to sell under an execution in his hands, after the judgment was satisfied.

In regard to the choses of the bank, this court has decided that the legal title vested in the trustee. The grant of power in the statute was "to sue for and collect all debts due the bank." This was held by implication to transfer the legal title, which was in the bank, and to vest it in the trustee.

We have above seen that a trustee will never be construed to take a greater estate than is required for the purposes of the trust. Hence, the power over the choses of the bank, or the legal title thereto which vested in the trustee, will not be held to be larger or of greater extent than is necessary to enable him fully to carry into effect the purposes of the trust. That trust was the payment of the debts of the bank. When they have been paid, there is no longer a reason why the implied legal estate of the trustee should be held to exist. Like the power to sell and dispose of the real estate, the right of the trustee to sue for and collect the debts, as it would appear, should terminate upon the payment of the debts of the bank.

If there was a resulting trust in favor of the stockholders, the case would be different. But we have seen that their right to the surplus did not survive the forfeiture. There can be no trust without a *cestui que trust* entitled to take it. Hence there

could not be a resulting trust in favor of the stockholder, for the obvious reason that they have no equities attaching to the surplus.

If, as we have decided, the assets of the bank are a trust fund exclusively for the benefit of the creditors, and that the stockholders have no claim upon it as creditors, for what purpose, it may be asked, should the power of the trustee to sue for and collect the outstanding debts, be held still to exist? The power could be exercised for no rational purpose, as there would be no one entitled to the fund when reduced into possession by the trustee. And for this reason alone, it is clear that a court of chancery would not compel the trustee to bring suit for the purpose of collecting these debts.

This shows conclusively, that in equity the authority of the trustee to sue for and collect the remaining debts would be considered at an end. The case of *Fox* v. *Horah*, above cited, is a decision in point. In this case, where a note was made payable to the cashier of the State bank, as trustee for the use and benefit of the bank, by whom it was discounted, and the bank charter afterwards expired by its own limitation, before it could be collected, it was held after judgment was obtained on the note by the cashier, that as the bank in equity had the sole right to the money secured by the note, and as that right had become extinct by the dissolution of the corporation, that the maker of the note was entitled to a perpetual injunction to restrain the collection of the note.

In delivering the opinion of the .court in that case, Judge Gaston said : " The bank was in truth the creditor; the note and the judgment were but securities belonging to the bank, and proper to be enforced to compel payment to the bank of what was due to it. No one could rightfully put these securities in use, but by the expressed or presumed direction of the bank. Upon the death of the bank, without succession or representative, this debt became, by law, as completely extinguished as it could have been by a release 'from the corporation. While there was a debt and a creditor, the trustee could not rightfully enforce the securities, but for the payment of the debt to the creditor. After the extinguishment of the debt, he

cannot rightfully enforce the securities because there is no debt to be paid, and no creditor to be satisfied."

It is clear, then, in equity, that the right or title of the trustee to sue after the execution of his trust, would be considered at an end.

At law, it is the settled rule that a trust estate given for specific purposes, should continue for so long a period, only as is necessary to effect the purposes of trust. In the case of *Doe dem. Player* v. *Nichols*, 2 Dow. & Ry. 458, it was said by Holroyd, J., "that the rule of law lately established by several of the late cases shows that the estate of trustees, even where there are words of inheritance used, shall continue in the trustee no longer than necessary for the performance of the trust." The same rule is recognized in *Doe* v. *Barthrop*, 5, Taunt. 382, and in *Doe* v. *Simpson*, 5 East, 162.

In the case of *Brown* v. *Weast*, it was decided by this court, that where one purchased land with the money of another, and has a conveyance made to himself, or has been paid the purchase-money of land, and has not conveyed, he is a trustee of a satisfied trust, and neither he nor his heir can recover upon his legal title against the beneficiary. 7 How. 181.

According to the rule of law recognized in these cases, it may clearly be inferred that the estate of the trustee in the assets, ceased upon the execution of his trust. His power or authority over the choses of the bank, or in other words his title to sue for and collect them, could not continue longer than was required by the purposes of the trust.

In modern times the courts have been induced to limit the duration of estates vested in trustees by the desire to prevent actions from being defeated by technical objections of outstanding legal estates. *Jones* v. *Cole*, 2 Bayley, R. 330; 1 Kelly, Rep. 381.

A reason equally strong exists why courts should discountenance recoveries, sought to be obtained upon mere naked legal title in the trustee, where the objects of his trust have been fully accomplished. Why permit the owner of a satisfied trust to recover upon his naked legal title, when, so soon as he has succeeded, he may be compelled to surrender his title as well

as his possession? In the case at bar, the reason applies with very great force. Why permit the trustee to recover upon his legal title, when if the trust has been satisfied, he may be enjoined by the debtors? Again, the trustee holds the property of the bank by legal assignment, which has been construed to vest him with the legal estate, for the purpose of executing the trust. The trust being ended by the payment of the debts, there would be no necessity for transferring the legal title. To whom could the legal title be transferred, if it still existed? But it ceased to exist in any one when the trust was performed. It became extinct in the same manner it was created, by operation of law.

It is said that if the demurrer be overruled, issue will be joined upon the plea in the court below; and it is strongly urged as an objection, that the court will not be competent to try it. We do not perceive the force of the objection. The question which, upon the issue, will be submitted to the jury, is one purely of fact; that is, whether the debts of the bank have not been paid off and discharged. This is certainly a question which a jury could readily comprehend and satisfactorily decide. The evidence might be complicated, but not necessarily so. We cannot doubt the ample jurisdiction of the circuit court to settle the account of the trustee. If that court has not the jurisdiction for that purpose, no other court has. A court of equity might incidentally, in a suit by a creditor of the bank against the trustee, compel the trustee to settle his accounts, but it has no direct supervisory jurisdiction over the subject.

Many of the questions presented by the record in this case are difficult, and of great importance. We have given to them the careful examination which their importance and the magnitude of the sum involved required, and our conclusion is, that the judgment should be reversed, the cause remanded, and the demurrer to the second plea be overruled in the court below.

Another question is presented by the demurrer to the third plea of the defendants, but upon that we pronounce no opinion.