FRANKS v. RECEIVER OF BOONEVILLE BANKING CO.

(In Banc. December 8, 1947. Suggestion of Error Overruled January 12, 1948.)

[32 So. (2d) 859. No. 36610.]

**Donald Franks,** of Booneville, for appellants.

.C. R. Bolton, of Tupelo, for appellee.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

On January 28, 1927, the Booneville Banking Company was a going banking corporation, and on that date Mr. and Mrs. H. L. Hill owed it $4,974.88, which was evidenced by their joint promissory note in such amount due and payable October 1st following. The note was signed at Seminole, Oklahoma, where both makers then resided, and Mr. Hill died there in 1945. After his death, Mrs. Hill returned to Mississippi. The note was payable at Booneville, Mississippi, and was secured by a life insurance policy on the life of Mr. Hill and a second deed of trust on some real estate subsequently foreclosed by the beneficiary in the prior trust deed, and the Bank received nothing from this land.

The Mutual Life Insurance Company of New York had issued the policy of insurance on the life of Mr. Hill, which was regularly assigned to the bank as collateral security. The policy was in force when the Booneville Banking Company closed its doors as insolvent in 1930 and was taken over for liquidation by the State Banking Department. When a change was made in the law, Mr. Seth Pounds became Receiver in 1934 under the jurisdiction of the Chancery Court of Prentiss County. Until 1934 the premiums were paid by loans from the life insurance company on the jointly signed applications of Mr. Hill and the Receiver, and one premium was paid by the Receiver out of receivership funds. No premiums were thereafter paid, but the policy was continued in force under its provision for extended term insurance. Shortly before the expiration of the term of this extension of the policy coverage, Mr. Hill died, January 1, 1945, as stated.

The Receiver filed his final account on October 5, 1940, in which he reported to the Court "that he has liquidated all of the items constituting assets of the Booneville Banking Company from which he has been able to realize any payments; that the remaining assets in his hands have proven uncollectable, and that in his judgment a continuation of the receivership for the purpose of endeavoring to realize on said assets would entail more expense than could be expected to be realized therefrom, and that it is to the best interest of the creditors of the Booneville Banking Company that the Receivership be closed, and that said items of assets be charged off and charged to the margin account, and that final dividends be paid." Among such uncollected, and then uncollectable, assets was the note of Mr. and Mrs. Hill, secured by the life insurance policy, supra, and he was then alive, and the policy still in force. On January 22, 1941, the final decree in the receivership was entered, approving the final account and discharging the receiver, concluding with these words, "and the receivership closed."

It is to be noted that this final decree contains no instructions as to the disposition of the uncollected assets; and reflects no sale thereof before the conclusion of the receivership. Appellants made the point that it does not contain any reservation of jurisdiction of the receivership for any purpose. The evidence shows that after his discharge as receiver, Mr. Pound retained these uncollected assets in his custody as a "trustee", he though, awaiting determination as to what should be done with them. When the death of Mr. Hill took place, that was the situation. He then, of course, had the life insurance policy in the Mutual Life Insurance Company, and the assignment theerof to the Booneville Banking Company.

After Mr. Hill's demise, appellants made demand upon the life insurance company for the death benefit fixed by the policy, $2,192; finally bringing suit in the circuit court for the recovery thereof. Mrs. Franks, a daughter, qualified as administratrix of Mr. Hill's estate, and as ad-

ministratrix and individually she was joined in the declaration by the widow, Mrs. Hill, and another daughter, they being the sole heirs-at-law of the decedent.

At the time of the discharge of the receiver of the Booneville Banking Company, he had been able to realize very little from the assets of the failed bank, and hence the depositors and other creditors had unpaid balances due them in an aggregate amount of approximately eighty-five percent of their original claims and, of course, much larger than the total death benefit due under the policy. Upon learning of the turn of events, several of these depositors filed a petition in the Chancery Court of Prentiss County, praying that the receivership be reopened and Mr. Seth Pounds be reappointed as receiver, and that he be directed to collect the amount due from the insurance company on the assigned policy, and distribute the proceeds under the orders of the court. This petition was filed June 23, 1945. On the same day, Mr. J. W. Latham, State Comptroller, of the State Banking Department, filed a similar petition, praying however, additionally that the receiver be allowed to collect not only the item involved here, but also any other collectible assets of the failed bank. On June 26, 1945, the chancellor signed a decree that a receiver be appointed ''for the collection and distribution of said moneys and it further appearing that Seth Pounds of Booneville, Mississippi, who was the former receiver for the bank, is a suitable and fit person to be appointed as receiver and that his appointment has been recommended by J. W. Latham, State Comptroller of Banks, and has been petitioned for by a number of depositors . . . Seth Pounds is appointed as receiver of the Booneville Banking Company, and his bond as receiver fixed at $4,000.00.'' Full authority was conferred upon the receiver to collect, by suit if necessary, the amount of the life insurance, as well as any other collectible assets of the insolvent bank.

Accordingly, Mr. Pounds, as receiver, made claim to the life insurance, and demanded its payment in accord-

ance with the assignment thereof to the Booneville Banking Company. The life insurance company refused to pay either of the parties claimant, and on or about July 21, 1945, filed a bill of interpleader in the Chancery Court of Prentiss County, stating it could not decide the conflicting claims at its peril, and praying that it be permitted to pay the money into court, and that the court require all parties to propound their claims thereto, and for the court to decide the issue. This was permitted, and the life insurance company was finally discharged. Upon the trial, both sets of claimants were heard, on proper pleadings and evidence, and a decree was entered awarding the disputed fund to the receiver, for benefit of the unpaid creditors, and a judgment entered against Mrs. Hill, individually, co-maker of the original note, for its unpaid balance.

Several issues were raised by appellants by their pleadings in the chancery court, but their assignments of error here is that the trial court erred in rendering a decree in favor of appellees, and refusing to sustain the claim of appellants, and in awarding a personal decree against Mrs. Hill. There is only one of the arguments of appellants that we deem to be serious enough for discussion. This was set forth in a plea, forming part of their answer to the bill of interpleader, aforesaid. It is summed up in this concluding clause of their plea: ''No jurisdiction in the matter of any purpose was reserved and it is the contention of the claimants that the court is now without jurisdiction to reopen the receivership and again entertain jurisdiction in the matter in any manner.'' We will not discuss or decide here whether or not this proceeding before us now is a collateral attack upon the establishment of the receivership, or whether permissible or not, since it is not necessary in view of the opinion we have reached.

In support of the contention raised by this plea, appellants say that the discharge of the first receiver was such a final decree that it closed the matter for all time, and

the court, therefore, could not reopen the receivership. The petition and the decree do use the word "reopen," and the same individual was appointed receiver in the instant case, but his appointment and qualification were in every respect the same as if there had never been a receivership—new petition, new oath, and new bond, in a new case, under a new number, on the general docket of the court. Therefore, we are unable to agree with this argument of appellants. We do not feel that the cases cited by appellants, in harmony with their quotation from Corpus Juris, are in point here. We can indicate their general trend by setting out the quotation: "A decree for distribution entered on final account is conclusive on all persons, and claimants who fail to prove their claims in the liquidation proceedings are precluded from any subsequent assertion of such claims." 9 C. J. S., Banks and Banking, sec. 440. We do not pursue this phase further.

Appellants next argue that upon the final discharge of a receiver of an insolvent bank, upon approval of the final account in the receivership, that the charter of the failed bank is dissolved, ipso facto. The final decree here, of course, does not assume to dissolve the corporation, but it is earnestly insisted that nevertheless the effect of it is to cancel the charter of the bank. Authority is cited to the effect that the dissolution of a corporation in general, in absence of statutory provision to the contrary, puts an end to its existence for all purposes, 19 C. J. S., Corporation, sec. 1727, and some Mississippi cases, Coulter & Richards, Executors, etc., v. William Robertson, Trustee, 24 Miss. 278, 57 Am. Dec. 168; John B. Nevitt v. Bank of Port Gibson, 6 Smedes & M. 513; Bank of Mississippi v. James Wrenn, 3 Smedes & M. 791. But there is no dissolution of the charter here. The property for benefit of its creditors, remained in his hands as trustee for whomsoever could rightfully claim it, and appellants made no effort to do so, until after Mr. Hill's death, and a new receiver had been appointed, as afore-

said. It is to be borne in mind, that the final decree did not direct the receiver to make any disposition of these uncollected assets; nor did it effect a dissolution of the corporation; nor did it cancel the indebtedness due by the Hills; nor did it avoid the assignment of the life insurance to the bank. So such cases as Trendley, et al. v. Illinois Traction Company et al., 241 Mo. 73, 145 S. W. 1; are not in point here. The debt and the collateral belonged to someone, certainly to the creditors of the bank to whom the obligation was due, and certainly debtors could not own their own debt, since debtors are obligated to pay, not to collect. The early Mississippi cases cited deal with the common law rule, which has now been changed by statute, and hence have no application here. As far back, indeed, as Chapter XXXV, Section IV, Article 21, Code 1857, it was the law, as now set forth in Section 5354, Code 1942, that "Debts due to and from the corporation shall not be extinguished by its dissolution, but shall be a charge upon its property".

Sections 5248 and 5257, Code 1942, deal with receiverships of insolvent banks, and nowhere is provision made for a dissolution of the corporate existence of the failed institution. However, in the same chapter of the Code of 1942 on Banks and Banking, Section 5276, dealing with the liquidation of solvent banks, by the stockholders, through the directors, does provide that the discharge of the liquidating directors shall carry with it the dissolution of the charter of the bank. So, we can find no merit in the contention that the discharge of the receiver, finally, effected the dissolution of the bank, and rendered the collection of the life insurance here beyond the power of a receiver, appointed without authority of law, by a court without jurisdiction.

Furthermore, the common law doctrine, urged by appellants, as supported by the early Mississippi cases cited, is apparently repudiated by Bank of Mississippi v. Duncan, 52 Miss. 740. The following rule from 13 Am. Jur.

1197, Section 1352, commends itself to us; even if there were a dissolution by the discharge of the receiver:

"Apart from statutory provisions, which frequently embody the following rule also, the general equitable rule now followed in this country is that upon the dissolution of a corporation, the property and assets of the corporation constitute a trust fund for the benefit of its creditors and stockholders. This rule necessarily displaces and makes obsolete the early common-law rules as to the reverter of real estate and the escheat of the personal estate of corporations in such case, and practically makes obsolete the doctrine as the extinguishment of the debts owing by and to the corporation in such case. Stated in another way, the rule is that after the dissolution of a corporation, its property passes to its stockholders subject to the payment of the corporate debts."

This general rule is in practical harmony with the provisions of our statute, Section 5354, Code 1942, which provides: "On the dissolution of any corporation, either by judgment or otherwise, all its real and personal estate shall be vester in the stockholders therein, in their respective proportions, who shall hold the same as tenants in common; but this section shall not extend to any property except that which the corporation might lawfully have held without forfeiting the same to the state. Debts due to and from the corporation shall not be extinguished by its dissolution, but shall be a charge upon its property."

The chancery court was right in its decree awarding the disputed proceeds of the life insurance to the receiver, and also entering decree against Mrs. Hill, co-maker with her husband of the note involved, for the unpaid balance thereof, and the decree is affirmed.

Affirmed.